P. McQuaid, Appellant, vs. B. W. Fontane, Appellee.

1. Goods bought by the husband in the name of his wife for a mercantile business conducted in her name, though she is not a free dealer under our statute, and action brought against the husband claiming that he was liable for the purchase price of the goods : in such case a refusal of the court to give an instruction which is based on the common law as to the husband's right to the profits of the business and his liability for its debts, without reference to the statutes of the State, which change the common law in regard to the rights and liabilities of husband and wife, when she has property of her own, and also without reference to whether the credit for the goods was given to the husband or the wife, was not error.

2. Though the wife may conduct a mercantile business in this State, and the husband may act as agent for her in that business, yet she cannot make a contract herself, or by him as agent, on which she will be personally liable ; and charges of the court, in a case concerning the husband's liability, from which the jury may infer that if he purchased goods for her she is so liable, are misleading and erroneous.

3. If a married woman is engaged in mercantile business, and the husband as agent purchases goods for her, the fact that it is her business, and that the purchase was made for her, is not enough to determine whether the credit for the purchase price was given to him or to her. It should be shown that the fact was known to the vendor, or that between him and the husband there was a clear and distinct understanding that the credit was given to her, else the husband will be liable.

4. A husband being sued, defended on the ground that the indebtedness was his wife's, not his. As a witness for himself, he was asked by the plaintiff whether he had made certain representations in New York in 1882, as to his reasons for doing business in the name of his wife, and whether he was insolvent in that year. On objection the questions were disallowed : *Held*, to be error, because they tended to test the *bona fides* of the husband and wife in conducting the business in her name.

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion.

*Hampton & Hampton* for Appellant.

*E. C. F. Sanchez* for Appellee.

The Chief-Justice delivered the opinion of the court:

The Appellant, P. McQuaid, sued B. W. Fontane, the Appellee, for goods sold and delivered. The declaration alleges that the defendant was trading under the name and style of F. W. Fontane. The defendant pleaded " never indebted," and also that he was not doing business under the name and style of " F. W. Fontane." The issues were

submitted to a jury on the evidence, and the jury found a verdict for defendant. The plaintiff moved for a new trial, which was denied, whereupon he appealed.

The first three errors assigned relating to the verdict come properly to be considered under the eleventh, which alleges error in the refusal of the court to grant a new trial. We proceed, then, to the fourth, which is the refusal to charge "that at common law a married woman cannot make any contract binding on her either at law or equity without the consent of her husband, and, therefore, if the wife carried on and regularly engaged in mercantile business, such business is that of her husband, and he is liable for its debts and may claim its profits, unless the wife shall first have obtained a license therefor as a free dealer. I charge you, therefore, that if you find from the evidence that F. W. Fontane, the wife of B. W. Fontane, was not at the time of the sale of the goods sued for a free dealer, but was engaged regularly as a trader or dealer with the consent and approval of her husband, the defendant herein, then the defendant is bound in law to pay the debts incurred in and by the said business."

There was no error in refusing to give this charge. The controversy turned upon the question whether the goods purchased by the defendant were for himself and on his own credit, or for F. W. Fontane, his wife, and on her credit. It was not claimed that she was a " free dealer," under our statute. From the evidence it is shown that the husband made the purchases in person or by letter, but made them in the name of his wife, the business being conducted in her name. There was further evidence that the money to begin the business was got from a sale of property belonging to the wife. Considering the charge in the light of this evidence it will be seen that in testing the liability of the defendant by the doctrine of the common law alone,

it ignored the constitution and statutory law of the State, which materially enlarged the rights of married women. Under the constitution in force at the time the goods were purchased it was declared that "all property, both real and personal, of the wife, owned by her before marriage, or acquired afterward by gift, devise, descent or purchase, shall be her separate property, and not liable for the debts of her husband." The statutes in force were such as to render this provision practically effective. To have instructed the jury in the language asked, when the rights of the parties on the evidence did not at all depend on the common law in its regulation of the rights of married women, would have been both superfluous and misleading. Besides, the charge ignored a familiar rule of law, which we shall have occasion to consider further on, that tests liability by the understanding of the parties as to the person to whom the credit was given.

The next error assigned is this charge of the court: "That the only question before them is to whom did the plaintiff sell these goods, B. W. Fontane or F. W. Fontane? If the goods were sold to B. W. Fontane, it makes no difference if he bought them in his wife's name or any other name, and he is liable for them. If the plaintiff intended to sell the goods to F. W. Fontane, she, if any one, is liable for them and not B. W. Fontane. He as her husband could have acted as her agent, and if he so acted, with the knowledge of plaintiff, he was not liable for the goods if he bought them in her name. The jury must determine from the evidence whether, if B. W. Fontane bought these goods, he bought them for himself or his wife, and whether, if plaintiff sold the goods to B. W. Fontane, he knew that he sold them for F. W. Fontane and gave her the credit for them. If he gave the credit to her, they should find for

P. McQuaid v. B. W. Fontane—Opinion of Court.

the defendant. If to defendant, they should find for plaintiff."

This and the succeeding charge, given at the request of defendant and alleged for error, we will consider together. The latter runs thus: "A married woman may carry on a mercantile or any other lawful business in her own name, and if you believe from the evidence that Mrs. F. W. Fontane was conducting a mercantile business in the town of Micanopy, and that the goods here sued for were sold to her either personally or to any one for her, that then she alone is liable and responsible; and if the goods sued for were sold to her (Mrs. F. W. Fontane) on the faith of her credit, and Benjamin W. Fontane never contracted for said goods and never agreed to pay for same, then you cannot find against B. W. Fontane therefor."

The correctness of these charges depends upon the legal status in which the husband and wife are left under the clause of the constitution quoted above, and the statute laws of the State on the subject. It is to be observed that we have in these charges no question presented as to the rights or liabilities of the wife by reason of any equitable separate estate or any statutory separate property she may have had, and the exemption of these from the debts of her husband. Nor is there any question presented as to the liability of her property for any debts incurred in connection with its management, or on its credit. The question presented is one pertaining purely to personal liability, without regard to any effect of the marital relation of the parties, and to be solved by ascertaining from the evidence to whom the credit for the goods was given. If the court gave the charges, having in mind that the wife was trading on money derived from her property, there is nothing in

34

them to indicate this to the jury. But even if there had been, we cannot approve the propositions involved in them to the extent they would carry us.

As we deduce them, these propositions are that a married woman, though not a free dealer under the statute, may conduct a mercantile business in this State and may therein incur personal liability, and that her husband may act as her agent in that business, and will incur no liability of his own in so acting. It is true we have no law restricting the business in which a married woman, living with her husband, may engage, whether she has separate property or not. If persons with whom she may deal are willing to rely upon her personal responsibility, or willing to trust her on the credit, of property she may have, there is no prohibition against their dealing together on such terms. But in either case she cannot be bound personally beyond her moral obligation. In the first she would incur no personal liability, because by reason of coverture she is incapable of making any contract that will so bind her. This is a settled doctrine in this State. See Lewis & wife vs. Yale, 4 Fla., 418 ; Dollner, Potter & Co. vs. Snow *et al.*, 16 Fla., 36 ; Hodges *et al.* vs. Price, 18 Fla., 342. In the second, she can only bind her property, her capacity for that as a *feme sole* being limited to her equitable separate estate, while as to her statutory separate property there must be consent of her husband to bind it; but, however bound, she would incur no personal liability. See cases just cited. For other cases showing how jealously the wife's rights over her own property are guarded, see Staley vs. Hamilton, 19 Fla., 275 ; O'Neill vs. Percival, 20 Fla., 937 ; Goss vs. Furman, 21 Fla., 406; Carn vs. Haisley, 22 Fla., 317. Neither the constitution quoted above nor the statute which secures to the wife her separate property in terms confers on her any power to make a contract binding on herself

personally. Nor is there anything in either from which an inference can be drawn that such a power was intended to be conferred. The provisions of the statute are: " When any female, a citizen of this State, shall marry, or when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts; *Provided, however*, That the property of the female shall remain in the care and management of her husband.

" Married women may become seized or possessed of real or personal property during coverture, by bequest, demise, gift, purchase or distribution: subject, however, to the restrictions, limitations and provisions contained in the foregoing section."

But for the proviso under which is retained to the husband the care and management of the property, and a clause in another section of the statute, which provides that " the husband and wife shall join in all sales " of her property, there might be reason for an inference from the words " notwithstanding her coverture " that she could contract in regard to it as a *feme sole;* but the right to contract independently, so as to bind herself or the property, is clearly inconsistent with the control reserved to him and with the requirement in regard to sales. Whatever she may do must be through him, or with his consent. This statute, therefore, makes no change of the marital relations, such as gives to the wife any capacity to bind herself personally by contract. It simply relieves her from the inequality and hardship of the common law, which gave her personal property to her husband and made it subject to his debts, by stamping upon it her separate

ownership, with exemption from those debts. The common law not only gave to him what she had at the time of marriage, but any acquired during the coverture went to him likewise; and this was so whether the after acquisition was achieved by herself or came from other sources. The marriage giving the husband her personal property also carried with it a right to her earnings. The Constitution and statute remove this subjection of her property, but do not affect her husband's right to her personal earnings, not connected with her property, nor remove the personal disabilities attaching to the coverture.

We have seen that one of these disabilities is, that she cannot make a contract which will be binding on her personally. Neither can her husband as agent make such a contract for her, for no agent can do what cannot be done by the principal. Hence in the case of a mercantile business conducted by her, as she cannot make herself personally liable in the purchase of goods, whether she has separate property or not, neither can she be made so liable through the agency of her husband. It follows that the charges we are considering, in so far as they told the jury that if the goods were sold to Mrs. Fontane personally, or to any one for her, she alone was liable, (meaning, in the absence of qualification, personal liability,) was erroneous; and though neither she nor her property was involved in the case, yet the error was a material one, inasmuch as the jury may have been led to the conclusion that her husband, the defendant, was not liable because, irrespective of any question of separate property, she was, if the goods were bought by him for her.

We might stop here, as for error in the charges we have been considering, the case must go back for a new trial; but the error assigned on the refusal of the court to grant

a new trial involves other questions which should be determined for the guidance of the court below.   On the facts of the case it became necessary to determine to whom the credit was given, whether to the defendant or to his wife. The ordinary rule is that when one acts for another in making a credit contract of purchase and names the principal, the agent is not personally responsible, because the credit is given not to him, but to the principal.   We express no opinion upon the evidence on that question in this case.   If it was given to the wife, we have seen that she could not be bound personally, and that, other understanding aside, the liability would attach to him.   We mean that in the absence of a clear and distinct understanding that the credit was given to her, he would be, but if there was such an understanding then he would not be; for in that case the plaintiff would have taken the risk of her credit, whether she could be bound or not, and there would be no wrong or injustice in holding him to a risk knowingly taken.

In the trial of the case there was evidence intended to prove that the business for which the goods were bought was the business of defendant's wife, and that the money invested in the business was hers, derived from the sale of separate property belonging to her.   If this was for the purpose of showing that the credit was given to her on account of her property, it would not, if proven, change the position in respect to her personal liability; and the defendant would not be relieved of liability unless it should be further shown to have been the clear and distinct understanding of the parties that the credit was so given.   It would not be enough to show that the business was hers and that the money to conduct it was hers, but it must be shown that this was known to the plaintiff or his agent. This being shown, while there would still be no personal

liability on the wife, the defendant would also be freed
from liability, and the plaintiff left to depend upon such
rights as would enure from the credit given on account of
the property. Owing to complications resulting from the
marital relation, and to the strong, often improper, influ-
ence, of the husband over the wife, the proof on these
points should not consist merely of inferences from facts
existing at the time, but not disclosed, or known to plain-
tiff or his agent, but of positive evidence of the existence
and knowledge thereof then on the part of plaintiff or
agent.

On the ruling of the court disallowing questions pro-
pounded by the plaintiff, there was error as to that which
enquired whether defendant had made certain representa-
tions in New York in 1882 as to his reasons for doing busi
ness in his wife's name, and as to that which enquired if
he was insolvent in that year. The defendant was claim-
ing that he was not liable because the business was his
wife's, not his. The questions were in the line of testing
the *bona fides* of the husband and wife in conducting the
business in her name, and in that view should have been
allowed. The question in regard to a proposed com-
promise, being in rebuttal of evidence on that subject for
the defendant, should also have been allowed, or else the
evidence for defendant should have been stricken out on
the motion of the plaintiff. The matter of compromise
would seem to be of no consequence, independent of what
may have been said affecting the question of disputed lia-
bility, but if of consequence in any view the plaintiff had
a right to draw out all that was said in regard to it. For
aught that appears in the record, the purpose of the ques-
tion may have been to show that in the conversation be-
tween the parties, the defendant conceded his own liability

for the debt, as distinct from a mere offer to compromise and pay his wife's debt.

The judgment is reversed and the case will be remanded for a new trial.