C. A. FAIRCHILD ET AL., APPELLANTS, VS. LUCINDA M. HOUSE, BY HER NEXT FRIEND, A. A. KNIGHT ET AL., APPELLEES.

1. A case in chancery is as much pending for the purpose of hearing a motion for an injunction when the papers are in the hands of the Judge of the Circuit Court as if they were in the Clerk's office of the Circuit Court of the county in which the case is brought. The

papers being thus in the hands of the Judge of the Circuit Court, he may, upon petition, find that he is disqualified, and before service of subpœna pass an order transferring the case to another circuit. Cases of the City of Jacksonville vs. Dorman, 13 Fla., 390, and Swepson *et al.* vs. Call *et al.*, 13 Fla., 337, referred to and explained.

2. An appeal in chancery opens the whole case to the respondent, and while the appellant may restrict his grounds for a reversal to particular errors alleged, yet the respondent will prevail if upon the whole record the order appealed from is proper.

3. Where the wife seeks to enjoin a sale of her separate statutory property, under an execution sued out by the creditors of her husband against him, she should bring her bill in equity through a next friend, making her husband and the plaintiffs in execution defendants, but a failure to do so is no ground to dissolve an injunction or dismiss the bill. The sheriff is not a proper party to such bill. In such case she cannot interpose a claim at law, as she is not empowered by the Constitution or the statutes to give a bond which would bind her personally, either at law or in equity, and she cannot act through a next friend at law.

4. Such portion of the statutes as, anterior to the Constitution, rendered the wife's property conditionally liable to the debts of the husband, is repealed by Section 26, Article 4, of the Constitution, which creates an unconditional exemption for such debts.

5. The Constitution, when viewed with reference to antecedent legislation, fixes the rule of construction to prevail. (Article XV., Section 2.) It is that all acts of the General Assembly, * * * "*not inconsistent*" with its provisions or with any ordinance or resolution adopted by the convention framing it, are in force.

6. At the time of the adoption of the Constitution married women might acquire and own two species of property, "*separate estate*" proper, which was an equitable estate, regulated mainly by the deed which created it, and "*separate statutory property*," which, as to its incidents, was controlled principally by the statutes. The Constitution must be construed with reference to the existing law. The terms "owned by her before marriage, or acquired afteward, * * * shall be her separate property," (Article 4, Section 26,) are not "*inconsistent*" with the existence of the estates then recognized and known as "separate estate" and "separate statutory property," and they continue to exist as before, except that the conditional liability for the husband's debts is repealed.

7. The allegations in a bill, by the wife against the judgment creditors of the husband, that property levied upon by them as the husband's was property purchased with her own means, and that she always was, and still is, the owner thereof, is a sufficient allegation of a separate property in her, and while, according to the rule prevailing in this State, she is to be held to full and strict proof of a separate property, the chancellor should in such case grant an injunction.

8. Where, in such cases, a motion upon affidavits before answer is made to dissolve such injunction, and the affidavit fails to deny such allegation of separate property, the injunction should not be dissolved, although, from the history of its acquisition by the wife, as stated in the bill, irregularities of a character sometimes adopted to accomplish the fraudulent purpose of screening property from debts to which it is subject are apparent, as it is possible that they may be consistent with fair dealing, and may be thus explained.

Appeal from the Circuit Court for Alachua county, to which the case was transferred from St. Johns county.

The bill, as originally filed in this case, was brought by Lucinda M. House, a married woman, in her own name, and not by her next friend, against a judgment and execution creditor of her husband and the sheriff, who had advertised for sale property which she alleges was her property. This property, she alleges, was furniture and materials and articles appertaining to a boarding-house in St. Augustine called the "Sunnyside," of which she was the licensed keeper, the licenses, as appear by the evidence of the clerk issuing them, extended from the 27th March, A. D. 1880, to 27th March, 1882. She alleges that the judgment against her husband was rendered on the 21st December, 1875 ; that the execution was issued on the 3d of January, 1881, and that the levy was made on the 4th of November, 1881. The sheriff swears that it was on the 22d of October, 1881. She alleges that the sheriff made no legal levy, not taking possession of, or assuming or exercising any dominion over, the property.

That she and not her husband is now the owner of the

property; that she has been such owner for many years, and that her ownership was notorious; that the sheriff knew the fact, and he was so advised at the time of the attempted levy; that on the 16th day of December, A. D. 1878, her husband mortgaged this property to Walter Lyon to secure the payment of $2,985.27; that said property was, when mortgaged, her property; that this fact was well known to Lyon, and that in consequence thereof said mortgage was subsequently, and on the 14th April, 1880, assigned to her. In this connection reference is made to exhibit B. to her bill, which is an affidavit of Lyon to the effect that when House executed this mortgage he and his wife both stated it was her property, and that when the mortgage was assigned on the 14th April, 1880, it was assigned to her. (To this assignment B. F. Oliveros was a witness. It appears from his affidavit, filed after bill, that when he witnessed the instrument on the 14th April, A. D. 1880, the name of Lucinda House did not appear and was not in the assignment as assignee; that the paper was not filed for record until the 22d October, 1881, and her name had been inserted in said assignment when it was filed for record. The assignment is to Lucinda, to have and to hold the goods, &c., to *him and his heirs.*) She then alleges a loan on the 27th January, 1876, to William Bradford of $3,000, and it appears that at that time a mortgage was executed to her by him for that sum, and that she assigned the mortgage to J. P. Harvard. She then alleges " that when she came to the State on or about October 28, 1868, she was possessed, in her own right and name, of moneys and other property to a larger amount than was or is invested in the purchasing of the furniture with which the said ' Sunnyside ' is now, and has heretofore been, supplied; that from her own separate estate she purchased and became the owner of the furniture with which the said

'Sunnyside' is furnished, and has always remained the owner, and is still the owner thereof."

She then sets up facts which it is claimed show irreparable injury in the event the sheriff is not enjoined from taking possession of and selling the property ; alleges inability to give the bond required of third persons who claim property levied on, and that she has good reason to believe that neither the sheriff nor his sureties are possessed of sufficient property above the exemptions allowed them by law to satisfy her in any judgment she might be able to recover against them for damages occasioned by a sale. She prays that the sheriff and the plaintiff in execution may be enjoined from further proceedings, for general relief, and for subpœna.

On the 21st November the bill, it appears, was presented to the Judge of the Fourth Judicial Circuit, and, on motion and petition of complainant's solicitor, the case was ordered transferred to the Fifth Judicial Circuit for Alachua county. On the 23d of November the papers are filed in the clerk's office of St. Johns county, and are transferred to and filed in the clerk's office for Alachua county on the 29th November, A. D. 1881. On the 25th November notice of motion for an injunction to be made on the 29th November, 1881, is served on defendants' solicitors. In the meanwhile a restraining order is granted until the hearing of this motion, and until further order of the court. On the 29th November, and before any copy is taken, the bill is amended by making A. A. Knight, as next friend of plaintiff, a party to the bill. On the 30th day of November, 1881, upon motion and affidavits and evidence, an order dissolving the restraining order and refusing an injunction, but permitting the bill to be amended, was made.

The evidence was a certified copy of the mortgage and assignment thereof already mentioned, an affidavit by the

sheriff that the levy he made was on the 22d October, 1881, and was accompanied with possession, and that upon his subsequently going to the house to remove the goods Thomas F. House gave him security for the forthcoming of the property, when he should require the same under the levy, a certificate of the Clerk of the Circuit that there is no record in his office showing the names of the sureties upon the bond of the sheriff, and that the tax-books show assessment against the sheriff to the value of $200, a statement showing that House was assessed for personal property valed at $1,100, and for real estate $4,000, a certificate that there was no return of any personal property belonging to Mrs. House, a certificate of the clerk to the effect that there is no inventory or schedule of property, real or personal, belonging to Lucinda M. House recorded or on file in his office, and a certified copy of the *fi. fa.* under which the levy was made.

Upon the evidence recited the injunction was, on the 30th November, refused as stated. On the 2d December Thomas F. House and Lucinda M. House, by her next friend A. A. Knight, filed an amended bill.

The bill alleges that since the hearing on the 29th November Lucinda M. House has made and tendered her bond with good and sufficent sureties as required by law in cases of claims by persons claiming property levied upon; that the sheriff refused to accept the bond; that thereupon she and her husband tendered a like bond complying with the law in such cases which was likewise refused; that upon subsequent order given by this court and telegraphed to him the sheriff refused to accept a bond and threatens to sell the property.

Plaintiffs prayed an injunction. The injunction was allowed, and from this order, and from the order allowing the amended bill, this appeal is taken.

*C. M. Cooper* and *Fleming & Daniel* for Appellants.

*Taylor & Sanchez* and *A. A. Knight* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The first question to be determined in this case is whether the Circuit Court of the Fifth Judicial Circuit had jurisdiction.

On the 21st November the bill was presented to the Judge of the Fourth Judicial Circuit, and on motion and petition of complainants, the Judge adjudicating and finding that he was disqualified, directed a transfer of the case to the Fifth Judicial Circuit. On the 23d of November the papers were filed in the clerk's office of St. Johns county in the Fourth Circuit, and from thence were transferred to and filed in the clerk's office of Alachua county in the Fifth Judicial Circuit. It is objected that the bill was not filed in the office of the Clerk of the Circuit Court for St. Johns county before the order of the Judge of that Circuit was made transferring the cause.

A case in chancery under the present practice is as much pending in the Circuit Court where the papers constituting it are in the hands of the Judge as if they were in the clerk's office, and it has been the practice in every Circuit in the State to treat a cause as pending for the purpose of hearing and granting or denying motion for an injunction before filing the paper with the clerk or service of process. Here such an injunction was prayed for, and the Judge practically denied the motion by holding that he had no jurisdiction, and upon petition suggesting disqualification and his finding such disqualification he orders the transfer. The case was, therefore, not only pending but pending for judicial action, so far as the matter of granting or refusing an injunction was concerned. The act of November 7,

1828, provides that "the Circuit Courts shall always be open for hearing and deciding motions *presenting, arguing and deciding upon petitions granting injunctions* and passing interlocutory orders and decrees." In this case there were interlocutory orders made at chambers. They were authorized by the statutes and the rules, which provide that all motions for rules or orders or other proceedings which may not be granted of course may be made at any time before the Judge of the court. Rules 2 to 5, Chancery Practice.

These conclusions are not in conflict with the cases cited from 13 Fla., 390 and 337. In the first case the act of 1851, Chap. 373, was controlled in its construction by the section of the Code which provided that an action was commenced by service of summons. Now the Code being repealed, we must construe it with reference to the statutes and rules controlling chancery practice.

In the second case what is said as to papers being filed in the clerk's office was said in reference to the provisions of section 3 of that act which expressly required the papers to be forwarded to the "*Clerk*" of the Court to which the cause was ordered transferred. It is not denied that this section has been complied with in this case. In the last case the Judge failed to find that he was disqualified in the order transferring the cause. That was the reason for a want of jurisdiction in the Columbia Circuit Court.

The Circuit Court of the Fifth Judicial Circuit having thus, as we think, jurisdiction, the next question which is suggested, and which it is proper to determine, is the extent to which this appeal opens the case for our consideration.

While the appellant here assigns the improper filing of the amended bill and its insufficiency as grounds for the reversal of the order awarding the injunction, and seeks only to set aside that order and the order allowing the

amendment, still the respondent, if he so desires, may go into the whole case.   4 Fla., 359 ; 16 Wend., 61, 85 ; 5 Paige, 296 ; 8 Cow., 338 ; 1 Beasley, 312.

Postponing the consideration of the questions arising upon the record as to parties and as to matters of practice, we enquire what is the case made by the original and amended bill.

It presents several different aspects :

First. It is a bill by the wife to enjoin the sale of her property levied upon to pay her husband's debts.

Second. A bill seeking an injunction to restrain a sale of the personal property of a third party on account of irremediable injury where damages at law would not be adequate compensation. In other words, a bill asking relief in equity because there was no complete adequate and full remedy at law for the damage threatened.

These equities are asserted in the original bill.

And third. A bill to restrain execution of legal process upon the ground of insolvency of the sheriff and his sureties, and the further ground that the action of the executive officer is contrary to law.   In other words, a refusal of legal rights.  This is asserted as the basis for equitable relief in the amended bill.

The first questions presented are therefore as to the jurisdiction of a court of equity in the cases stated.   As to the jurisdiction of a court of equity in this State in the case first stated, that is to enjoin the sale of the wife's property when assaulted by a creditor of the husband, there can be no question.

As to its jurisdiction in the second case it is unnecessary to determine here, because the wife's equity arises out of her relation as wife, and her equities exist independent of any questions which might arise in the case where the levy was made upon the property of a third person not invested

with the equities of a married woman in reference to such property. In the case of a third person not a *feme covert* it has been held that he would be required to show that the property was of such character or possessed of such peculiar value or interest to the owner that he could not be compensated by damages at law, while in the case of the wife all she has to show is that it is her property. Peculiar value, special interest and such things do not control her equitable rights in this respect. For this reason all of the original bill in this case which sets up or attempts to set up a peculiar value in the chattels levied upon is surplusage and unnecessary so far as the question of jurisdiction is concerned.

As to the third equity. Restraining legal process against one person because an insolvent officer is proceeding to enforce it against another without regard to the legal rights of this other. The consideration of this question involves the determination of the extent of the legal right of the third person, because if no such legal right of the third person exists no such enquiry can arise. In other words, in this case whether the wife has the right at law either with or without her husband to interpose a claim to property levied upon as her husband's and to prosecute such a proceeding at law.

The determination of this question involves to some extent a consideration of the subject of the wife's separate estate and her statutory property in this State. Our consideration of this subject will also necessarily involve in this case (for it is here raised) the question whether the constitutional exemption of the wife's property from liability to the husband's debts repeals that portion of the statute which renders it liable, not absolutely, but "*as if the act had not been passed,*" in the event it is not inventoried and recorded as required by the statute.

The property here claimed by the wife is goods and

chattels acquired by her during coverture, which, if the act had not passed, would have been subject to the debts of her husband. At common law, so far as the facts are disclosed in this record, this property would be liable for the husband's debts.

The statute controlling the subject anterior to the Constitution of 1868 was the statute of 1845, which is as follows:

" 2. Hereafter when any female, a citizen of this State, shall marry, or when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts: *Provided, however*, That the property of the female shall remain in the care and management of her husband."

" 3. Married women may hereafter become seized or possessed of real and personal property, during coverture, by bequest, demise, gift, purchase or distribution; subject, however, to the restrictions, limitations and provisions contained in the foregoing section."

" 4. Any married woman having separate and independent title to property, under and by virtue of this act, shall not be entitled to sue her husband for the rent, hire, issues, proceeds or profits of said property, nor shall the husband charge for his management and care of the property of his wife."

" 5. The husband and wife shall join in all sales, transfers and conveyances of the property of the wife, and the real estate of the wife shall only be conveyed by the joint deed of the husband and wife, duly attested, authenticated and admitted to record, according to the laws of Florida regulating conveyances of real property."

" 6. The husband shall not be held or deemed liable to pay the debts of his wife contracted prior to any marriage hereafter to be solemnized in this State, but the property of the wife shall be subject to such debts."

" 8. All the property, real and personal, which shall belong to the wife at the time of her marriage, or which she may acquire in any of the modes hereinbefore mentioned, shall be inventoried and recorded in the Circuit Court Clerk's office of the county in which such property is situated, within six months after such marriage, or after said property shall be acquired by her, at the peril of becoming liable for her husband's debts, as if this act had not been passed : *Provided,* That any omission to make said inventory and record shall in no case confer any rights upon her husband."

The Constitution of 1868, so far as it relates to this subject, is as follows: Article 4, Section 26, provides that: "All property, both real and personal, of the wife owned by her before marriage, or acquired afterward by gift, devise, descent or purchase, shall be her separate property and not liable for the debts of her husband."

The Constitution of 1868, Article XV., Section 2, provides " that all acts and resolutions of the General Assembly, * * * not inconsistent with the provisions of the Constitution and statutes of the United States, or with this Constitution, or with any ordinance or resolution adopted by this convention, and which have not been, and are not by this Constitution, annulled, are in force, and shall be considered and esteemed as the laws of the State until such acts or resolutions shall be repealed by the Legislature of the State or this convention."

This act, it will be admitted, is not embraced in the statute repealed or abrogated by the provisions of Article XV., Section 2, of the Constitution, except in so far as it

may be "*inconsistent*" with the provisions of the Constitution upon the subject, as it certainly is not inconsistent with the laws or Constitution of the United States, or with any ordinances or resolution of the Convention of 1868.

A moment's consideration will show that in this case our enquiries upon this subject are limited to two questions.

First. Whether the act of 1845, so far as it provides for a conditional liability of the wife's property acquired during coverture, to the husband's debts is not repealed. In other words, whether the exemption of the Constitution is not absolute and fixed, dependent alone upon establishing the fact that the property is the separate property of the wife, not controlled or regulated by any past legislation upon the subject.

Second. Whether the wife, with or without her husband, could, under the act of 1845, have interposed a claim to try her title to personal property, acquired during overture, which had been levied upon under an execution against her husband, and if yea or nay, whether the Constitution has denied such power or given it, as the case may be.

To the first question :

This is not regulation of organic or constitutional provisions by subsequent legislation, and, therefore, it does not present to this court a case wherein we are to determine the constitutionality of a limitation or regulation by the Legislature of an exemption secured by an antecedent Constitution. Hence the delicate duty of determining whether the exercise of power by the Legislative Department of the government is in conflict with our common, superior and official creator, the Constitution, does not here devolve upon us. In this case the rule of construction is fixed by the Constitution itself. It provides that if the conditional liability fixed by the antecedent statute is not "*inconsistent*" with the absolute fixed exemption of the Constitution itself, then the statute may be operative.

While it cannot be denied that an organic or legislative exemption from sale under execution of personal property, (real property was exempt at common law,) is in derogation of the common law, yet it is true that in many of the States, perhaps in a majority of them, the rule applied to statutory or constitutional exemptions, even of personal property generally, is that they are to be construed liberally. Here the exemption is of the property of one person from liability for the debts of another. For, while the provision of the Constitution, so far as it empowers a *feme covert* to *acquire* personal property, is in derogation of the common law, and if to be construed liberally must be done so upon the principles of intent and public policy, yet the statute which subsequently subjects property thus acquired to the debt of the husband for the benefit of his creditor, and which, at the same time, provides that the " omission " which gives the creditor the right, " shall in no case confer any right upon the husband," is certainly, to the extent of the peculiar liability created, in derogation of the common law.

This statute is therefore of a character which is to receive a strict construction if it is to be held operative in this case. We do not think, however, that it can so operate. A conditional liability is " *inconsistent*" with an absolute and unrestricted exemption.

The statute imposes the first, the Constitution vests the latter; the statute ceases to be " in force," the Constitution alone becomes operative. It is certainly true, also, that a constitutional provision, regulating the same matter as a statute, must be construed with reference to existing law upon the subject, and in this view, if the statute is to be held to control and to be operative, then the constitutional provision was unnecessary, as without it the rule of the statute would have prevailed. A construction of this ex-

emption clause of the Constitution which would make it mere surplusage, (12 Fla., 205,) and which would engraft on it a limitation or modification, existing by virtue of an antecedent statute, we cannot conceive is proper.

The next question (which has been before stated as one of the questions involved in this case) is whether, under the act of 1845, the wife, with or without her husband, could interpose a claim and try her title to property levied upon under a *fi. fa.* against her husband, and if yea or nay, whether the Constitution has denied such power or given it. As to the separate estate of the wife, it has been held that the husband in possession is a trustee, and that he may interpose a claim where the property is levied upon under a *fi. fa.* against a person other than himself. (27 Ala., 169.) When his creditors make the levy upon such separate estate the rule may perhaps be different. But this matter is not here involved. What we are to deal with here is the wife's separate property. In this property, under the statute, the wife has the title both legal and equitable. This title, both legal and equitable, however, is subject, under the statute, to the marital rights of the husband so far as they exist under the statute creating the statutory separate property, or the common law, which is operative whenever the statute does not control. The marital rights of the husband here exist or are created to the extent that he has the right to its care and management, and is not subject to be sued by the wife for its hire or rent. This statute, while it protects and continues the title of the wife to real and personal property owned by her at the marriage, and enables her to become seized or possessed of it during coverture, does not give her the right to bring an action in her own name at law for its protection. She is not invested with the powers of a *feme sole* as to this property. We understand the rule to be that the wife is not clothed with the powers of a *feme sole* in

respect to her separate statutory property unless that power is given in express terms, or in terms from which such power is necessarily implied or follows in law, and then the power exists only to the extent of such implication. The statute here simply continues her title to property owned by her at the marriage or acquired afterwards, and protects it from her husband's debts. Neither in express terms nor by implication does this confer the power of a *feme sole*, or give her the right to sue in her own name, nor can she unite with her husband in a case of this character to file a claim to property. As to her separate statutory property, the interest of the husband here is adverse to the wife, not so, it may be, perhaps, in a social or domestic sense, but so in a legal sense, for her interest in the property is controlled, modified and limited by his marital rights. It is for this reason that whenever she asserts her equitable title to such property when assailed by her husband's creditors, which is this case, her husband should be a party defendant in order that he may protect his marital rights. Again, the wife not being a *feme sole*, cannot make a bond which would bind her personally at law or in equity. She cannot either go into a court of law through her next friend. Indeed, there is no such thing as a suit at law by a *feme covert* through a next friend, because she is the party to a suit by next friend, and it is for collateral reasons, outside of her right of action, that she acts through him. She is the party, he the instrument, for collateral purposes unnecessary to mention here.

In the case of Price *et ux.* vs. Sanchez, 8 Fla., 136, the husband and wife interpose a claim, and this court, upon appeal, decided the case, but the question was not there raised, and the case does not control us unless it was considered and decided.

Has the Constitution changed the statute in any other re-

spect than to repeal the antecedent conditional liability for the debts of the husband? To this extent, and to this extent only, we think the Constitution changes the statute, for we can discover no inconsistency in any other respect between the two. Indeed, if we recollect that in this State the distinction between separate property under the statute and separate estate in equity had been recognized in many cases, and that separate property was such as existed under the statute with its incidents, we cannot see how we are to create some new species of interest in the wife. The Constitution must be interpreted in view of the then existing law. It is not inconsistent with the general nature of a separate property in the wife that the husband should manage it, and for his management should have the control of the rents to support the family. Indeed, in most of the States where such separate statutory property exists, the husband is allowed some interest or power in the matter.

Again, a careful examination of the Constitution shows that it does not in terms give the right to the wife to retain or to acquire property, but the language is in the past tense and relates to a present power and existing right. It refers to property " owned " and " acquired," and while independent of the statute such a provision might be held to invest the wife with such rights, yet, in view of the existing statute conferring and regulating this right of acquiring property, we think, construing the Constitution with reference to existing rights, the separate property there intended is such as existed under the statute.

Our conclusion is that the Constitution repeals the statute only to the extent of removing the conditional liability, and it therefore follows from what has been said before that the wife not being a *femc' sole* under the statute or Constitution, she cannot file a claim bond and resort to this

method to try her title to the property involved in this suit.

The wife being unable, either with or without her husband, to give this bond at law, it follows in this case that the injunction granted upon the amended bill was erroneous so far as it was based upon the view that she could give such bond, and as that was its only foundation the final order was erroneous.

The only remaining question is whether the bill does not itself authorize an injunction. We think it does. The allegation is substantially that she purchased this property with her own means, and that she always was, and still is, the owner thereof. This is an express averment that the title is in her, and that it is her property, and while the rule as to the proof of this allegation is very strict, and she should be required to establish it clearly, yet this general allegation in the pleading is sufficient. (1 McCarter, 429.) Upon this property thus alleged to be hers the sheriff levies an execution to satisfy a debt of the husband. There was equity in the bill, and a preliminary injunction or restraining order was proper. Such portion of the bill here as alleges matters concerning the levy is, for the purposes of this suit, immaterial. The equity set up is that it is the property of the wife, and it is immaterial whether the levy was a good one or not. It was at least an attempt to levy, and the court properly enjoined any further proceedings in that direction.

The motion to dissolve here is upon bill and affidavits before answer. The affidavits submitted by the defendants do not traverse the material allegation of the bill. While the burden of proof may be upon the wife upon the issues to be made in future, and she should be held to strict and full proof, yet we cannot, because certain irregularities of a character usually adopted to accomplish the fraudulent

purpose of screening property from debts to which it is subject are apparent upon the face of the bill, direct a dissolution of the injunction.

Before disposing of the case a few words in reference to parties is proper. The bill here should have been by the wife, through her next friend, against the husband and the creditor. "In all such cases," says Judge Story, "she ought to sue as sole plaintiff by her next friend, and the husband should be made a party defendant." (Story's Eq. Pldg., §63 ; 1 Daniels' Chy. Practice, 109 ; 1 McCarter, 423 ; 21 Ark., 272 ; 1 Beas., 97 ; 2 Keen, 60 ; 14 M'r'l'd, 258.) There has been in this case neither demurrer, answer nor plea, and the wife should be permitted to amend by making parties as stated. The want of such parties is no ground for the dissolution of the injunction or the dismissal of the bill. 2 Keen, 60 ; 1 McCarter, 424 ; 1 Daniels' Chy. Practice, 109, and cases cited.

Again, the sheriff here is not a proper or a necessary party. As to the views of this court upon this subject see 13 Fla., 116 ; see also 4 Ired., 474 ; 10 Ohio, 268.

The court should require proper security for the forthcoming of the property to abide final decree. If the defendants wish affirmative relief here a cross-bill will be necessary.

The order allowing an injunction until the further order of the court is affirmed, and the case will be remanded for further proceedings consistent with this opinion and conformable to law, the costs to be equally divided between the parties.