## ROBERT MARYE & CO., APPELLANTS, vs. WILLIAM ROOT ET UX., APPELLEES.

1. A bill in equity alleges: That in the dwelling houses standing on land, (which, as represented by another part of the bill, is the separate statutory property of the wife), or in one of such houses, are much furniture and other household goods of a costly kind, amounting in value with other personal property which the husband has, to more than the sum of the constitutional exemption. That defendants, husband and wife, claim that this property is the property of the wife, and as such exempt from sale to satisfy complainants' judgment against the husband and other judgments against him, which complainants deny to be a fact: *Held*, on demurrer, not to show ground for equitable relief against the personalty as property of the husband.

2. A bill in equity alleges: That the dwelling houses, store house, warehouse, wharf, pier and all other structures and improvements on land, shown by the bill elsewhere to be the separate statutory property of the wife, were constructed and paid for in so far as they have been paid for by the husband with his

own money: *Held*, on demurrer, not to show that the improvements were constructed or paid for, even in part, with the husband's money.

3. The rent, income or profits of a wife's separate statutory real property cannot be subjected by creditors of her husband to the payment of her husband's debts. Dollner, Potter & Co. vs. Snow, 16 Fla., 86; Fairchild vs. Knight, 18 Fla., 770; McGill vs. McGill, 19 Fla., 341; Harwood vs. Root, 20 Fla., 940, reviewed and held not inconsistent with this conclusion.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*E. M. L'Engle* for Appellants.

No appearance for Appellees.

RANEY, C. J.:

The allegations of the bill are:

1. That appellants recovered judgment at law against Root, February 5th, 1883, and that execution issued thereon and has been returned *nulla bona*.

2. That on July 13th, 1869, a described piece of real estate in Jacksonville was conveyed by Holmes and wife to Mrs. Root, "to have and to hold the said premises with the appurtenances unto the party of the second part, her heirs and assigns, to her and their own sole and proper use, benefit and behoof in fee simple;" and on the 13th of March, 1875, Reed and

wife conveyed another piece of land in the same city to Mrs. Root, "to have and to hold the same, with the appurtenances, to the party of the second part, her heirs and assigns, to her own proper use, benefit and behoof forever." That upon the former lot there has been built, since its conveyance, and recently, two handsome and costly brick dwelling houses, one of which and a portion of the other are rented for monthly or weekly sums, unknown to complainant, and the remainder of the last mentioned house is occupied by defendants as a house and residence; and that upon the latter lot there have since been constructed a large and costly brick and stone store three stories high, a large iron covered warehouse and wharf and pier, which are rented for monthly sums unknown to complainants, and Root has an office and place of business therein.

3. That complainants being informed by general reputation, believe and so charge that all of said dwelling houses, store house, warehouse, wharf, pier, and all other structures and improvements on said parcels of land were constructed and paid for, in so far as they have been paid for, by Root with his own money.

4. That Root is a competent business man, capable of earning by his personal labors and services a sufficient and liberal support for himself and wife and two children; and besides the income he makes from this source he is entitled by law to receive the rents and

profits of the lands, houses, wharf, pier and other real estate herein set forth.

5. In the dwelling houses, or in one of them, are, so complainants are informed and believe, much furniture and other household goods of a costly kind amounting in value, with other personal property which the defendant Root has, to more than the sum of the constitutional exemption. On information and belief, complainants say that defendant's claim that this personal property is the property of Mrs. Root, and as such is exempt from sale to satisfy complainants' judgment and other judgments against Root, which your orators deny to be a fact.

The prayer is for a receiver of the real estate and personal property to preserve and care for the same and to collect rents, and for injunction against any sale of the personal property till the further order of the court, and for discovery, and for account of the rents, and that the rents and the personal property and all other property that may be discovered, be applied to complainants' execution, and executions of other creditors of Root.

The bill was demurred to as not stating a case entitling complainants to relief, and the demurrer sustained, the order *overruling* it is now before us for review.

The question for decision is the liability of the personal property and of the income or rents of the real estate to the debts of the husband.

As to the personalty, it is sufficient to say that if it is the property of the husband, and certainly no other meaning than that it is can be put upon the allegations of the bill, the complainants' remedy at law by levying his execution upon such of it as is not exempt from sale by the constitution and statutes and selling it, is ample. If the title to this property is ostensibly in Mrs. Root, there is still no allegation in the bill that it was purchased with the funds of her husband, nor any other allegation sufficient to show that equitably it is his property, or otherwise give a court of chancery jurisdiction; the allegation that she and her husband claim it to be her property, is not enough, considered either alone or in connection with the averment that it is the property of the husband. There is nothing in Fairchild vs. Knight, 18 Fla., 770, or in Bolman vs. Overall, 86 Ala., 168; S. C. 2 So. Rep., 624, inconsistent with these views.

This brings us to the consideration of the liability of rents and profits of the realty to the husband's debts. The real estate is upon the face of the deeds the legal or separate statutory property of the wife; the entire title is in her, Harwood vs. Root, 20 Fla., 940; and it is likewise so on the face of the bill. It is not contended that it is equitably his property, nor is the third paragraph of the bill so pleaded as to constitute an averment that the improvements, to which alone it relates, were constructed or paid for even in part by Root with his own money.

The statutory and constitutional provisions to be no-

ticed in connection with the contention of the complainants are certain sections of the act of March 6th, 1845, sections 3, 4. 5, p. 754–5, McClellan's Digest, and the 26th section of Article IV of the Constitution of 1868.

These sections of the statute are as follows : When any female, a citizen of this State, shall marry, or when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts: *Provided, however,* That the property of the female shall remain in the care and management of her husband.

Married women may become seized or possessed of real or personal property, during coverture, by bequest, demise, gift, purchase or distribution ; subject, however, to the restrictions, limitations and provisions contained in the foregoing section.

Any married woman having separate and independent title to property, under and by virtue of the above sections, shall not be entitled to sue her husband for the rent, hire, issues, proceeds or profits of said property, nor shall the husband charge for his management and care of the property of his wife.

The section of the Constitution is : All property, both real and personal, of the wife, owned by her before marriage, or acquired afterward by gift, devise, descent or purchase, shall be her separate property, and not liable for the debts of her husband.

Another feature of the above statute, sec. 8, p. 755, McClellan's Digest, was that the property should be inventoried and recorded in the office of the clerk of the circuit court of the county in which the property was situated, within six months after the marriage, or after the acquisition of the property, at the peril of becoming liable for the husband's debts, the same as if the law had not been passed, it being provided, however, that any omission to make the inventory and record should in no case confer any right upon the husband. This requirement of an inventory and record was held in Knight vs. Fairchild, 18 Fla., 770, to have been impliedly repealed by the above section of the Constitution of 1868, as it imposed a constitutional liability for the husband's debts, and was therefore inconsistent with the provision of the Constitution, but that otherwise the separate statutory property of the wife continued as before the adoption of the Constitution.

At the common law if the wife at the time of marriage owned land, or if during coverture she acquired it by descent or by purchase, the husband became entitled to the rents and profits of the land during the coverture, unless the acquisition, whether before or during coverture, was by purchase, and attended with provisions limiting it to her sole and separate use independent of or relieved from his marital rights. She could during coverture acquire real estate directly either by inheritance or by purchase, but not in the latter manner if the husband dissented, still his assent

was always presumed in the absence of express dissent. The right of dissent was to protect him against being made a tenant to his own disadvantage. His marital rights in land of which she was seized in fee were not a simple or bare right to the rents and income from it during coverture. He had also during the coverture such an interest in the property that he could convey it by his separate deed, and the conveyance would, in case she survived him, be effectual during the coverture, and vest the purchaser with his possession for that period and with the right to the rents and profits, and this interest could also be subjected to execution for the payment of his debts with like effect. This interest is regarded as a freehold estate in the land during the coverture, and of such he was seized. 2 Kent's Commentaries (13th ed.), 130, 131; 1 Washburne on Real Property, Chapter IX, pars. 1, 2, 3, 12, 15, 16, 21; Robertson vs. Norris, 63 Eng. Com. Law (2 Ad. & E.), 916; Junction R. R. Co. vs. Harris, 9 Ind., 184; Oldham vs. Henderson, 5 Dana (Ky.), 254; Barber vs. Root, 10 Mass., 260; Melvin vs. Proprietors, 16 Pick., 165; Babb vs. Perley, 1 Greenleaf, 6. These marital rights are not to be confounded with that at *curtesy*. 1 Washburne on Real Property, Chapter IX, par. I, 21; Oldham vs. Henderson, *supra*.

The position of the learned counsel for the appellants is, that the effect of the statute was to secure to the wife the title to her personal property which at common law vested in her husband absolutely, and to abolish the freehold estate which it gave to him, but

that the right to the rents and profits of the real estate was not destroyed.

But for subsequent qualification in the above act its general provisions would make the wife's statutory property not only exempt from execution for her husband's debts, but also as entirely separate, independent and beyond his control as if the coverture did not exist. The rights of the husband in the wife's land during coverture, and that these rights could be subjected to his debts against her will, and she be deprived of the possession and beneficial use, rents and profits of such lands during their marriage, were well known to the Legislature, and to relieve her from such disabilities as incident to the continuance of the coverture was clearly a purpose of the above sections of the statute. The effect of this would be to exclude him from any interest in her property and to relieve it from being taken in execution in any manner for his debts. The levy of a *fi. fa.* on a supposed freehold estate as existing in the husband notwithstanding the statute, is no more hostile to these provisions of the act than a garnishment or other sequestration of rents and profits would be. Either would take the beneficial use of the land from the wife against her will and apply it to his creditors, which, in the end, was the very thing intended to be prevented as incident to the existence of the coverture.

Such being the clear effect of the general provisions, we are to enquire what qualification has been put upon them. The only qualification is the proviso to the first

of the above sections, and, if they can be called such, the provisions of the last section. The proviso is: " That the property of the female shall remain in the care and management of the husband." Provisos are to be strictly construed and are not to be given an effect not fairly within their terms. Their office is to except something from the enacting clause. State ex rel. vs. Commissioners of Duval County, 23 Fla., 483, 486. The title to the wife's property shall not be taken in execution for her husband's debts, yet the property shall remain in the care and management of the husband. This was nothing more than consigning to the care and management of the husband the wife's property with the unmistakable declaration that the title to it should continue separate, independent and beyond the control of her husband, and the property should not be taken against her will to pay his creditors. The object of the proviso was the care and management of the wife's property, and there is nothing in these considerations inconsistent with an entire separation and independence of the title of her property and of any control on his part other than actual care and management of the property. Subsequent sections of the same statute provide for sales, conveyances and transfers of her property by the joint act of both of them, and prescribed the interest he shall take in her property at her death, should he survive her.

The provisions of the last section, that the wife shall not be entitled to sue her husband for the rent, hire,

issues, proceeds or profits of the property, nor shall
the husband charge for his management and care of
the property, are not evidence that the legislature in-
tended that the rents and profits should continue to
vest in the husband as at common law and be liable
for his debts. To give them such effect by construction
would defeat the expressly declared purpose of the
law makers to protect the property from the husband's
creditors, and turn to the benefit of such creditors
provisions intended, as is apparent, simply for the
benefit of the husband and wife and the peace of the
marital relation. Without this section there would
have been ground, in view of the broad language of
the first section, for holding the purpose of the legis-
lature to be that the husband's care and management
of this separate statutory property should be as an or-
dinary trustee liable to be called to account and enti-
tled to compensation. Though in the legislative judg-
ment the welfare of the family dictated that the wife's
legal property, relieved of the husband's common law
property rights in it, should be in his care and man-
agement, the last section shows the same judgment to
have regarded it as also essential to that domestic rela-
tion that there should be no liability of the husband
to be sued by the wife for rent, hire, issues and profits
of the property, or right on his part to charge for his
management or care. These provisions are really a
limitation upon the proviso to the first section, with-
out which proviso the husband would have had no
control of the property by virtue of his marital rela-

tion, and they are doubtless suggested by the disturbing effect of possible litigation as to the care and management of the property, upon the peace of the family. The policy of the law as to the care and management during coverture of property falling under its provisions, is that it shall be entrusted to the husband without liability to be called to account in the courts by the wife, and without right to charge; and although this was intended for the benefit of the husband and wife, and family, so was the provision that the property, nor any part or incident of it, should not be taken in execution for the husband's debts, and there is no incongruity or antagonism between the two features of the statute. The idea that a wife cannot sue a husband for a wrong he has done to her property is not anomalous. 1 Kent, 131; Babb vs. Perley, *supra.*

It is not contended that this point has been directly passed upon by this court, yet it is argued that the court has by its decisions settled the law as being that the husband is under the statute and provision of the Constitution entitled to the rents and profits of the wife's separate statutory property. The decisions referred to did not involve the precise point in question, nor do we think the observations made in them justify the conclusion drawn by counsel. In Dollner, Potter & Co. vs. Snow, 16 Fla., 86, a suit against a married woman to charge her separate estate with the payment of a promissory note, the complaint failing to show the character of her estate, it is said the purpose of the

whole law was to give the wife additional rights, not to destroy those existing before, and that the statute provided that *"her title* should continue separate, independent and beyond the control of her husband, not to be taken into execution for his debts, notwithstanding her coverture, but the property was to remain in the care of her husband, and the wife was not permitted to sue for the rents, hires or issues of property to which she had separate and independent title under the act. This must be restricted in its application to such property only as would by virtue of the marital rights of the husband have otherwise passed to him or to his care and management—that is such property as to which the husband by virtue of marriage became entitled to ownership or control." Again, in Fairchild vs. Knight, *supra,* where the wife's separate statutory property had been levied on under a *fi. fa.* against her husband, and she has sued in equity to enjoin the sale, it is, in discussing her right to interpose a statutory claim for the trial of her title to the property, observed: "In this property under the statute the wife has title, both legal and equitable. This title, both legal and equitable, is subject under the statute to the marital rights of the husband so far as they exist under the statute, or under the common law which is operative whenever the statute does not control. The marital rights here exist or are created to the extent that he has the right to its care and management, and is not subject to be sued by the wife for its hire or rent. * * *." The statute

"simply continues her title to property owned by her at the marriage or acquired afterwards, and protects it from her husband's debts. Neither in express terms nor by implication does this confer the power of a *feme sole*, or give the right to sue in her own name, nor can she unite with her husband in a cause of this character to file a claim. As her separate property the interest of her husband here is adverse to the wife, not so, it may be, perhaps, in a social or domestic sense, but so in a legal sense, for her interest in the property is controlled, modified and limited by his marital rights. It is for this reason that whenever she asserts her equitable title to such property when assailed by her husband's creditors, which is this case, the husband should be a party in order to protect his marital rights." Again, on the same point it is observed : "The Constitution must be interpreted in view of the then existing law. It is not inconsistent with the general nature of a separate property in the wife that the husband should manage it, and for his management, should have control of the rents to support the family." In Harwood vs. Root, 20 Fla., 940, a bill filed to subject a wife's statutory property to payment for goods purchased by her, it is remarked : "In this case we have the husband and wife incurring this debt, and both pledging the separate statutory property. The husband under the statute is entitled to the rents and profits of the separate statutory property of the wife." In McGill vs. McGill, 19 Fla., 341, a case in which a divorce, a

*vincula*, was granted at the suit of the wife, the decree required the husband to surrender notes taken by him for rent of lands of the wife, but whether for past or future use of the land does not appear. This part of the decree was reversed, the court saying: "The policy of this statute is to give to the husband the current use and proceeds of the land received during coverture, and he is under no obligation to account to her therefor. It is, therefore, beyond the reach of the court in a proceeding for divorce."

We see nothing whatever in these expressions to preclude the conclusion we have reached. Those from the first case do not require comment; and the fact that the husband's right to the care and management of the property gives him the status of a defendant whenever the wife is, from inability to execute a claim bond, forced into equity to protect her property from being subjected to his debts, as is held in Fairchild vs. Knight, does not establish that the court meant his interest in the property to be such that its rents and profits can be subjected to his debts; and certainly the same may be said of the expression, in the same case, that the wife has the title both legal and equitable, and that it is not inconsistent with the general nature of a separate property that the husband should manage it, and for his management have control of the rents to *support the family*. The observations in Harwood vs. Root, that the husband is entitled to the rents and profits is too general to be taken as an indication of

the opinion of the court on the point before us, or as not meaning that he was entitled to them for the *support of the family.* McGill vs. McGill holds that under the statute the husband could not be called by the wife to account for the rentals of the land received during coverture, and that the notes were practically such. It cannot be deduced from this that a creditor could during the coverture have subjected such notes in the face of the statute to the payment of the husband's debts; nor am I required by anything in the present case to assent to the view that rental notes held by the husband at the time of the dissolution of the coverture by divorce may be retained by him.

It is also argued that as the husband is entitled to have the rents, profits and income, and hence is the beneficiary of the income of the wife's separate statutory property, and to this extent occupies the position of a *cestui que trust* of a fund, and the principle that the beneficial interest of a *cestui que trust*, not under disability, is liable for the payments of his debts, is invoked under the decisions of Nichols v. Levy, 5 Wall, 441, and other cases cited in appellant's brief. The answer to this is, as indicated above, that the statute in giving him the care and management of the property has declared that it shall not be liable for his debts, and his rights, are not such that either the rents and profits, or other beneficial use of the property, can be taken to satisfy his creditors.

The order appealed from is affirmed.