S. G. FRITZ, APPELLANT, VS. J. D. FERNANDEZ, AS EXECUTOR OF THE WILL OF WILHELMINA PETERS FRITZ, DECEASED, APPELLEE.

1. Where a married woman owns separate statutory property, and is permitted by her husband to manage and control such property, and it is apparent that the husband does not exercise any coercive or improper influence over the wife in the disposition or management of such property, and the wife loans her money to the husband, or a copartnership in which he is a member, for the purpose of conducting a business in which the wife clearly disclaims

all interest except that of creditor of the husband or firm, and where it is distinctly understood between husband and wife that she does sustain such relation, and the firm executes its notes to her or to a trustee for her, for the money loaned by her, and the wife dies, leaving a will and executor therein named, and after her death the notes are delivered to the executor by the bank in which the wife had deposited them, on a bill filed by the executor claiming the business and property, in which the wife's money had been invested, as her business and her property, and praying that it be decreed to be her business and property, the prayer of such a bill should not be granted, and a decree made to that effect is erroneous.

2.   While a wife and husband can not at common law make valid contracts with each other, and cannot contract with each other at law in any other manner than is permitted by the statute law, yet in equity she may become his creditor, or the creditor of a firm of which he is a member, and equity will enforce her rights growing out of such relation.

3. Courts of equity recognize the right of a married woman to make gifts to her husband, and will sustain such gifts when the circumstances show that there has been no fraud, imposition, oppression, or undue influence practiced upon the wife—no advantage taken of her in obtaining them—and the gifts are such as under the circumstances are fair and reasonable.

4. In order to constitute a valid gift from the wife to the husband, the transaction must be consummated by delivery of the thing given, and where the wife has loaned her husband or a firm of which he is a member money, and has taken notes for such loans and has retained possession of them until her death, and has not delivered them to her husband, there has been no gift to the husband of such notes, and they are assets of her estate.

This case was decided by Division A.

Appeal from the Circuit Court for Duval County.

*E. P. Axtell* and *M. C. Jordan,* for Appellant;

*W. B. Young,* for Appellee.

## STATEMENT.

On the 24th June, 1898, J. D. Fernandez, as executor of the will of Wilhelmina Peters Fritz, filed his bill of complaint in the Circuit Court of Duval county, Florida, against S. G. Fritz of Jacksonville, in said county, wherein he alleged:

1st. That Wilhelmina Peters Fritz departed this life on the 20th day of June, 1898, at her home in said city, leaving her last will and testament which has been duly admitted to probate in said county.

2nd. That complainant was appointed in and by said will executor, and duly qualified as such and letters testamentary have been issued to him by the county judge of said county.

3rd. That the defendant S. G. Fritz was the lawful husband of the said Wilhelmina P. Fritz during her lifetime.

4th. That said Fritz was a poor man, and was at the time of his intermarriage with said testatrix possessed of no money, estate or property to any extent.

5th. That the said testatrix was possessed of a large estate and a large sum of money, and securities easily converted into money.

6th. That the said defendant for some time past has

been conducting a saloon and restaurant on Forsyth street, near Hogan, in said city.

7th. That he has invested in the said business, in the purchase of fixtures and furniture and in wines, liquors, beer, cigars and other supplies and appliances usual in bar rooms and restaurants the sum of eight thousand four hundred and sixty-one dollars, of the money of his late wife, as complainant is informed by the sworn answer of said Fritz now on file in this court in another suit.

8th. That outside of the said saloon, restaurant, fixtures, furniture, stock, supplies and appliances the said defendant has no visible property.

9th. That the money of the said testatrix having been used as above stated by the said defendant, and having been by him invested in said property, complainant is advised that in equity the said property was the separate property of testatrix, and that complainant, as her executor, is entitled to the possession thereof, and that said Fritz, in equity, took said property in trust for said testatrix and now holds the same in trust for her executor.

10th. That said complainant has demanded of said Fritz possession of said property and said Fritz has refused to deliver the same, claiming that it is his property and that he is a debtor to the estate of said testatrix to the amount of the moneys of testatrix so used by him.

11th. That the entire property is not worth and will not sell for as great a sum as the amount of money of said testatrix invested therein.

12th. That since the death of the testatrix said defendant has been carrying on the business and making sales and has deposited a large sum, the proceeds of such sales, in the National Bank of the State of Florida to his own credit.

20  S. C.

Fritz v. Fernandez—Statement of Case.

13th. That said Fritz purchased all of said property with the money of said testatrix, the same being her separate property under the constitution and laws of Florida, and that he in equity holds the same in trust for the complainant as executor of the said Wilhelmina Peters Fritz.

Complainant prayed that defendant be required to answer the allegations of the bill; that he be decreed to have taken the property described in trust for Wilhelmina P. Fritz, and to hold the legal title in trust for orator as executor; that he be enjoined from using the moneys derived from the business since the death of Wilhelmina, or drawing them from the bank; that the same be decreed to be paid your orator; that a receiver be appointed to take charge of said property and business pending this suit; that said Fritz may be required to account for and pay over to your orator all moneys received by him from the said saloon and cafe and from the sales of any of said property between the death of said testatrix and the time when any receiver appointed by this court may take charge, and general relief. The allegations of the bill were sworn to.

On the 24th June, 1898, defendant Fritz answered the bill, and admitted the first six allegations of the bill. He and interest of said Gustave Von Allwarden in said firm conducting a saloon and restaurant business on Forsyth street, near Hogan street, in Jacksonville, but alleges that said business was and is his own, and did not belong to his said wife. He admits that said business and fixtures, furniture, stock, supplies, and appurtenances connected therewith constitute a large portion of the property of which defendant is now possessed. He denied that he purchased said property with the money of his wife, or that he invested her money to the extent of $8461, or any other

amount, in the purchase of said property, and denied that in equity said property was the separate property of his his said wife, or that complainant is entitled to the same, or that defendant took said property in trust for his wife's executor. Defendant admits that complainant demanded said property, and that defendant refused to deliver the same to him, but avers the property to be his own, and while worth a good deal, does not know what could be realized by a sale thereof. Defendant admits that he has been conducting and carrying on said business since his wife's death, and has deposited the money arising therefrom in the National Bank of the State of Florida to his credit and on his own account ever since he has owned and been engaged in the business.

The defendant avers that on or about 24th December, 1895, he entered into a partnership with Gustave Von Allwarden to conduct the business of saloon-keepers, liquordealers, restaurant and hotel keepers, under the firm name of G. Von Allwarden & Co.; that said partners opened the business and purchased the furniture and fixtures now owned by this defendant; that said firm borrowed from defendant's wife, Wilhelmina Peters Fritz, and invested in said business, the sum of $3,500, and gave therefor three notes executed in the name of G. Von Allwarden & Co. to one John N. C. Stockton as trustee for said Wilhelmina Peters Fritz; that thereafter during the existence of said partnership the said firm borrowed from the said defendant's wife the further sum of $4,961, which indebtedness was represented in part by the notes of said firm and in part by checks of the said Wilhelmina and by an open account of $201, which moneys were used by said firm in their said partnership business; that on or about 4th September, 1897, the defendant purchased all the right, title

for $500, which amount defendant's wife gave him to pay for said interest; that said amount was not a loan from his wife, but a gift to assist him in building up a business, and that afterwards defendant's said wife paid the amount then outstanding and due by the firm of G. Von Allwarden & Co. proper; that defendant has always deposited the moneys arising from said business in the National Bank of the State of Florida to his own cedit, and has always used the same in said business and otherwise, and that his said wife well knew these facts, and that she did not in any way control or manage the business; that his wife had large property interests of her own, which she managed and controlled for herself without reference to the defendant, and with which he had nothing to do; that she collected all money due from her property, and used the same for her own use and benefit, as she thought best; that she always kept a separate bank account in her own name, and deposited her moneys to her own credit; that the funds arising from defendant's business he always kept separate and distinct from his wife's property; that defendant has given his entire time and attention to this business ever since the business was started by the firm of G. Von Allwarden & Co. in December, 1895; that while defendant's wife was possessed of a large and valuable estate, she did not in her will, made subsequent to their marriage, to-wit: in 1892, and before the defendant engaged in his said business, provide for the defendant leaving him only $25; that defendant believes that his wife, knowing the provisions of her will, determined and intended during her lifetime to provide for defendant by making him a gift of the moneys loaned and paid out by her on account of the said business as aforesaid.

On the 30th June, 1898, the Circuit Judge made an order appointing A. G. Hartridge receiver and directed him to take possession of the saloon and business known as the "Cafe Belvedere," in Jacksonville, with the furniture, fixtures, stock and appliances, ordering defendant Fritz to turn over the same to the receiver, and enjoining him as prayed in the bill.

On the 19th July, 1898, replication was filed, and on 18th October, 1898, Henry C. Goodell was appointed special examiner to take the testimony and report the same to the court.

Eleven witnesses were examined on behalf of the defendant, and each one of them deposed in substance that they had conversations with Mrs. Fritz, after the dissolution of the partnership between Fritz and Von Allwarden, in regard to the saloon business; several of them with reference to selling goods, liquors, &c., to her for the business, and each and all of them testify that Mrs. Fritz said to them she did not own the business; that she had given it to Fritz, and that it belonged to him and was under his control. So far as the record shows all these witnesses, except perhaps one, were disinterested; and upon this point there was no proof to the contrary.

It appears there was a chancery suit in Duval county brought by Von Allwarden against Fritz and his wife in 1897 for an accounting, involving his interest in this identical business. The answer of S. G. Fritz and Wilhelmina P. Fritz in that case, sworn to on 4th August, 1897, was offered and read in evidence in the case at bar. It is very voluminous and only such parts as seem to be pertinent to this case will be referred to. Among other things the answer contains the following allegations: "And these defendants further answering say that Wilhelmina Pe-

ters Fritz is the largest creditor and the chief creditor of the firm of G. Von Allwarden & Company, and more in-.terested in the success of the business than any other creditor, since its success is her only hope of being repaid the moneys due her." "And the said Wilhelmina Peters Fritz for herself says that she as such creditor, larger than all others in the aggregate, is opposed to said property being in the hands of a receiver, and is more vitally interested in having the business operated than all others; that it was always her purpose to prevent, so far as her means would allow, any judgment against the concern in favor of small creditors, or suits to harrass them, since her own interest by reason of the large amount due her, demanded that she protect the concern by assuming or paying small accounts; and it was and is her purpose to protect by payment, if the necessity arises, the amount due upon fixtures, and that in no way does the said complainant stand in any relation or attitude of having the debts of the concern coming against him, but that if they did it would be matter of absolute immateriality, so far as he is concerned, since he is without means, property or reputation in the community for sobriety, or business habits, or pecuniary responsibility." This answer was sworn to by both S. G. Fritz and Wilhelmina P. Fritz.

The will of Wilhelmina P. Fritz was introduced and read in evidence. This will is dated 14th June, A. D. 1893, and the ninth paragraph is as follows:· "I give and bequeath to my husband, George Fritz, the sum of twenty-five dollars ($25.00) which I direct my executor hereinafter named (the complainant in this suit) to pay and take his receipt therefor.

It appears from the testimony of complainant that the National Bank of the State of Florida turned over to the

executor fifty-three notes executed by the firm of Von All-
warden & Co., some of them immediately to Wilhelmina.
P. Fritz, and some to John N. C. Stockton as trustee for
her. They were introduced and read in evidence, and rep-
resent various sums of money which Wilhelmina had loan-
ed the firm to begin and carry on the business. In addi-
tion to these notes the bank turned over to the executor
over $30,000 of other assets, but there were other assets,
the amount of which is not given. It is plain from the
testimony that the firm of G. Von Allwarden & Co. con
sisted of G. Von Allwarden and S. G. Fritz, and of no
one else.

It is stated by Mr. John E. Hartridge, who was Mrs.
Fritz's attorney, that in a conversation between Mrs.
Fritz, Mr. Fritz and himself, that Mrs. Fritz said that to
protect herself she wished always to have the first lien
on the business as against any other debts, and she paid
many things for the purpose of keeping the establishment
free from debts and liens. He also stated on the day of
Mrs. Fritz's burial, or near that day, Fritz asked him if
he could open up the business, and that he answered he
(Hartridge) had nothing to do with it, but thought the ex-
ecutor would authorize him to do so, as it would impair
the value of the business to have the place shut up, and
that on the day the will was probated he was asked by
Fritz to intercede with the executor to allow him to run
the business until he could make arrangements with some
large brewer to take it up for him to operate. Mr. Hart-
ridge also testified that after Mrs. Fritz's marriage to
Fritz she retained control of her property.

We think it clearly appears from the testimony that
Mrs. Fritz was a woman of business experience and ca-
pacity; that her husband had no undue influence over her,

and that he was without property when he was married to Mrs. Fritz; that their relations were not unpleasant, and that she was desirous of aiding him to build up a successful business.

On the 14th June, 1899, the court made a final decree wherein it is ordered, adjudged and decreed that the entire property described in the complainant's bill herein, and which was taken possession of and sold by the receiver appointed herein by a decree of this court, was purchased with money which was then and there the statutory separate property of the defendant's wife, and that the moneys in the hands of the receiver, the proceeds of the sale of said property, is assets of the estate of Mrs. Wilhelmina Peters Fritz, deceased, and that complainant is entitled to receive the same as her executor."

From this decree an appeal was taken to this court.

HOCKER, J., (after stating the facts.)

There are four assignments of error: 1st. The court erred in allowing complainant, by order dated March 16th, 1899, ten days to take testimony in rebuttal after the cause had been set down for hearing for complainant. The replication was filed 19th July, 1898. No testimony was taken until 19th October, 1898, the special examiner having been appointed on 18th, October, 1898. On the 19th October the defendant examined his witnesses, and the complainant objected on the ground that the time had expired, and relying on this objection set the cause for a hearing, and on March 16, 1899, moved the court to exclude and suppress the testimony of defendant taken on the 19th October, 1898, on the ground it was not taken within three months after the cause was at issue, and to exclude the testimony of defendant Fritz.

The court correctly denied the motion to suppress the testimony taken on the 19th (Maxwell v. Jacksonville Loan & Imp. Co., decided at present term), and also correctly granted complainant ten days to take testimony in rebuttal. Inasmuch as the defendant waited until the last moment to take his testimony, we discover no error or abuse of discretion under this assignment.

The second, third and fourth assignments of error, are as follows: 2nd. The court erred in decreeing that the entire property described in complainant's bill, and which was taken possession of and sold by the receiver appointed herein by the decree of this court, was purchased with money which was then and thereafter the separate statutory property of the defendant's wife.

3rd. The court erred in decreeing that the money in the hands of the receiver, the proceeds of the sale of said property, is assets of the estate of Mrs. Wilhelmina Peters Fritz, deceased, and that complainant is entitled to receive the same as her executor.

4th  The court erred in making the decree dated June 14th, 1899, whereby it was decreed that the property described in the bill of complaint was the separate statutory property of Wilhelmina P. Fritz, and that complainant as her executor was entitled to receive the proceeds of the sale of said property.

The theory of the bill of complaint is, that inasmuch as Mrs. Fritz's money bought and paid for the saloon property, liquors, fixtures, &c., irrespective of the real agreement of Mrs. Fritz with Von Allwarden & Co., or her husband, that the property was really hers; that under our statute (section 2071 Rev. Stats.) the husband was the wife's trustee, and that she being a married woman could make no contract with her husband with regard to her separate statutory property.

It is contended by appellee that the law of Alabama as to a married woman's separate statutory property more nearly resembles our own than that of any other State, and that the consent of the wife can impart no validity to the investment of her money in her husband's name, or in the name of Von Allwarden & Co. The case of De Bardelaben v. Stoudenmire, 82 Ala. 574, 2 South. Rep. 488, is. relied upon.

The sections of the Alabama code of 1876, on which this decision is based, are the following, viz. Section 2705. All property of the wife held by her previous to the marriage, or which she may become entitled to after the marriage in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband.

Section 2706. Property thus belonging to the wife vests in the husband as her trustee, who has the right to manage and control the same, and is not required to account with the wife, her heirs or legal representatives for the rents, incomes and profits thereof, but such rent, income and profits are not subject to the payment of the debts of the husband.

In the case cited the husband was charged with committing waste on the statutory separate property (real estate) of the deceased wife. It was contended that the land from which the houses were removed was made the wife's equitable separate estate by reason of an antenuptial agreement between her and her husband by which he renounced his marital rights in the property and agreed to let the wife have the complete control and management of it. The agreement was verbal and not reduced to writing. The court says: "Whatever effect such agreement would have operated to produce, if it had related to personal property, it was void under the influence of the stat-

ute of fraud, because the *right* of the husband was an interest in land and not therefore a proper subject of verbal transfer." It is perfectly evident that our statute (Sec. 2071 Rev. Stats.) does not *vest* the property of the wife in the husband, especially in view of section 1 Art. XI of our constitution of 1885. In the case of Marye *v.* Root, 27 Fla. 453, 8 South. Rep. 636, this court examined with care the provisions of our statute law, now contained in section 2071 Rev. Stats. and as to the provision that the property of the wife shall remain in the care and management of the husband, the court says (p. 462) : "The object of the proviso was the care and management of the wife's property; and there is nothing in these considerations inconsistent with an entire separation and independence of the title of her property; *and of any control on his part other than actual care and management of the property*" (italics ours). It also says the provisions "that the wife shall not be entitled to sue her husband for the rent, hire, issues, proceeds or profits of the property, nor shall the husband charge for his management and care of the property, are not evidence that the legislature intended that the rents and profits should *continue to vest* in the husband, as at common law, and be liable for his debts.   *   *   *   Without this section there would have been ground, in view of the broad language of the first section, for holding the purpose of the legislature to be that the husband's care and management of this separate statutory propery should *be as an ordinary trustee, to be called to account and entitled to compensation.*" It is further said (p. 464) that these provisions were intended for the benefit of the husband and wife and family. From this and other decisions of this court, as well as from the plain meaning of the constitution, we do not think that section

2071 Revised Statutes thrusts the husband *in invitum* into a trust relation to his wife's property, though of course, he may become such a trustee by his dealings with her property.

This court has recognized the differences between the equitable estate of a married woman and her separate statutory property in several cases. Fairchild v. Knight, 18 Fla. 770; Harwood v. Root, 20 Fla. 940. It has also held that a married woman can make no contract which makes her personally liable, either at law or in equity. Prentiss v. Paisley, 25 Fla. 927, 7 South. Rep. 56; McQuaid v. Fontaine, 24 Fla. 509, 5 south. Rep. 274, and other cases. At the common law a man and wife could make no contract with each other, and their contracts are nullities. 2 Story's Eq. Jur. (13th ed.) Sec. 1372. But courts of equity, while they follow the law, will under certain circumstances give full force and validity to postnuptial contracts. Ibid. note (a). In section 1372 ibid. it is said: "It is upon similar grounds that a wife may become a creditor of her husband by acts and contracts during marriage, and her rights as such will be enforced against him and his representatives. Thus, for example, if a wife should unite with her husband to pledge her estate or otherwise to raise a sum of money out of it to pay his debts, or to answer his necessities, whatever might be the mode adopted to carry that purpose into effect, the transaction would in equity be treated according to the true intent of the parties. She would be deemed a creditor or surety for him (if so originally understood between them) for the sum so paid, and she would be entitled to reimbursement out of his estate, and to the like privileges as belong to other creditors." Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. Rep. 351; Sims

v. Rickets, 35 Ind. 181; Edelin v. Edelin, 11 Md. 415; 15 Am. & Eng. Ency. Law (2nd Ed.) 853. In like manner courts of equity recognize the right of a married woman to make gifts to the husband when the circumstances show that there has been no fraud, imposition, oppression, or undue influence practiced upon the wife—no advantage taken of her, and the gifts are such as under the circumstances are fair and reasonable. 2 Story's Eq. Jur. Sec. 1388 *et seq.*; 2 Bishop on Law of Married Women, Secs. 174-175. There is of course a difference between the wife's power of disposition of a purely equitable estate, and of her purely statutory property. In the former case courts of equity recognize her complete power of disposition, unless that power was limited in the instrument creating the estate. In the latter case the power of disposition is regulated by the statues which create the separate statutory property. Crawford v. Gamble, 22 Fla. 487; Springfield Co. v. Ely, 44 Fla. 319, 32 South Rep. 892. In this State as a married woman may transfer and convey her separate statutory property with the consent of her husband (sec. 2072 Revised Statutes), no reason is conceived why she may not make a gift to him of her property, if, as said before, there is no coercion or undue influence exerted upon her in causing her to make the gift; as his acceptance involves his consent to the transfer, which is esssential to the gift, the nature of the transfer being governed by the nature of the property. Oldenburg v. Miller, 82 Mich. 650, 46 N. W. Rep. 1041; Osburn v. Throckmorton, 90 Va. 311, 18 S. E. Rep. 285; Martin v. Jennings, 52 S. C. 371, 29 S. E. Rep. 807; 14 Am. & Eng. Ency. Law (2nd ed.) 1034. It is essential, however, to a valid gift *inter vivos,* that there be "a gratuitous and absolute transfer of the property from the donor to the donee,

taking effect immediately and fully executed by a delivery of the property by the donor and an acceptance thereof by the donee." 14 Am. Eng. Ency. Law (2nd ed.) p. 1015; Horn's Ex. v. Gartmen, 1 Fla. 63; Powell v. Leonard, 9 Fla. 359; Ross v. Walker, 44 Fla. 704, 32 South. Rep. 934.

Applying the foregoing principles to this case we find that the bill is constructed on the theory, as said before, that the husband was the statutory trustee of his wife's property, and that property bought with money which she loaned the firm, of which her husband was a member, continued to be her property, and that the decree appealed from follows the theory of the bill.

The facts show, we think conclusively, that Mrs. Fritz was a woman of business capacity and judgment; that she was not under the coercive influence of her husband; that the relation which she intended to occupy to the firm of Von Allwarden & Co. was that of creditor; that she claimed no sort of interest in the business of that firm, other than that of creditor; that she managed and controlled her own property and that her husband Fritz never asserted any so-called marital right to manage or control it, and granting that he had such rights, that he waived them; that after the dissolution of the firm of Von Allwarden & Co. she recognized her husband as the owner of the property and business of the firm, and that she manifested a desire to make a provision for her husband, which under the circumstances was not unreasonable, but that the notes introduced in the evidence were never parted with by Mrs. Fritz; never delivered to her husband, and whatever else she may have given him, she did not in law give him these notes; that these notes belong to the executor, are assets of the testatrix's estate,

and in a proper porceeding are enforceable against the firm which executed them, and the members thereof.

It follows that the decree was erroneous, and it is hereby reversed at the cost of the appellee, with leave to complainant below, if he so desires, to amend the bill, making Von Allwarden & Co. parties defendant, and with such other appropriate amendments in the allegations and prayer as may be necessary to present the claims of the testatrix, in accordance with the views here expressed.