No. 11.—GEORGE G. FLEMING, guardian, &c. plaintiff in error, *vs.* ELIJAH TOWNSEND, defendant.

[1.] Possession retained by the vendor, after an absolute sale of real or personal property, is *prima facie* evidence of fraud, which may be explained, and after the possession is proven, the burthen of explaining it rests upon those who claim under the sale ; and the rule is applicable to voluntary conveyances, and to sales for valuable consideration.

[2.] *Purchasers* are not embraced in the terms of the *Stat.* 13 *Elizabeth*; nor is *personal property* embraced in the terms of the *Stat.* 27 *Elizabeth* ; but purchasers fall within the spirit of the 13 *Elizabeth*, and *personal property* within the spirit of 27 *Elizabeth*.

[3.] Upon Common Law principles, a voluntary conveyance is void, against a subsequent *bona fide* purchaser for value, without notice.

[4.] *Held*, that to sustain a voluntary conveyance against a subsequent *bona fide* purchaser, for valuable consideration, notice to the purchaser must be *actual;* and that the registration of the conveyance is not such notice as will deprive him of the benefit of the *Stat.* 27 *Elizabeth.*

Trover, in McIntosh Superior Court. Tried before Judge Fleming, November Term, 1848.

This was an action of trover, for the recovery of two negro slaves, Joe and Elsy. Upon the trial it appeared, that on the 4th day of May, 1835, John L. Taylor, by bill of sale, conveyed the said negroes, with one other, together with certain stock—cattle, hogs and horses—to said George G. Fleming, for a consideration expressed on its face, of $1400 ; and that on the 7th May, 1835, said Fleming, for the same expressed consideration, conveyed the said negroes to the children of John L. Taylor. Both bills of sale were recorded on the 19th of October, 1835. The negroes remained in the possession of John L. Taylor. His children were minors, and had no other guardian, and lived with him. The witness, who drew the bills of sale, stated that five or ten dollars were paid in cash by Fleming to Taylor, and that he had an indistinct recollection of a note having been given.

On the 1st January, 1842, for the consideration of $800, the said John L. Taylor, by bill of sale, conveyed Joe and Elsy to the defendant, Elijah Townsend, the negroes being then under levy of executions against John L. Taylor, and in his possession.

A verdict was rendered for the defendant. Subsequently, a motion was made for a new trial, on the following grounds :

1st. Because the verdict is contrary to law.

2nd. Because the verdict is contrary to evidence.

3d. Because his Honor charged the Jury that the retention of possession by a vendor or donor of personal property, after an absolute conveyance, directly or indirectly, to his children, is *prima facie* evidence of fraud.

4th. Because his Honor charged the Jury that by the Common Law and the English Statutes, the retention of possession of personal property, by the vendor, even after a sale to his children, is *prima facie* evidence of fraud, as against subsequent purchasers, as well as creditors, although the deed of conveyance should be duly recorded, according to the laws of the State of Georgia.

5th. Because the verdict is contrary to law and evidence.

Which motion was overruled by the Court, and this decision is here alleged to be erroneous.

THOMAS T. LONG and HARDEN & LAWTON, for plaintiff in error.

DELYON & LLOYD, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The first proposition of the presiding Judge, to which the plaintiff in error excepts, is this : " The retention of possession by the vendor of personal property, after an absolute sale, is *prima facie* evidence of fraud, and if unexplained, becomes conclusive." This point has been so often before this Court, that I do not consider it an open question. Few, if any Courts, have ventured to question that the retaining of possession, was *a badge of fraud.* The question has been, whether it was not, *per se,* a fraud, not susceptible of explanation, and which, of itself, would annul the sale. It has also been a question, as to what amount of explanation would remove the presumption of fraud from possession ; and whether the Courts should not lay their hand upon the matter, and adjudge, as a question of law, when the presumption was rebutted, rather than that the whole question of explanation should be left in the hands of the Jury. That possession is a *mark* of fraud, has not been doubted—certainly, not since *Twyne's* case, in which it was resolved to be one. This Court has adopted the rule, equally applicable to real and personal estate, to sales for valuable consideration, and to voluntary deeds, *that possession in the vendor, in case of an absolute sale, is prima facie evidence of fraud ; that it may be explained ; that the onus of explanation, after possession is proven, is upon the grantee, and that the question of fraud or not is submitted to the Jury.* *Peck vs. Land*, 2 *Kelly*, 12. Those who are curious to explore this question, will find it critically and ably discussed in the notes of the American editors, to Twyne's case. 1 *Smith's Leading Cases*, 29 *to* 60. Whether this transaction be viewed in the light of a sale from Taylor to Fleming, or taking the deed from Taylor to Fleming, and from Fleming to Taylor's children together, as a voluntary conveyance, by indirection, from Taylor to his chil-

dren, the rule was correctly applied to it by the Circuit Judge. Considering this point as settled by this Court, I enter into no discussion, but leave it as a standing decision.

[2.] The rule thus established by this Court, has received its application, in cases of contests between *creditors of the grantor* and the grantee, or those claiming under him. The Statute of 13 *Elizabeth,* it is conceded, covers such cases, because that Statute makes void all fraudulent conveyances of *lands* or *goods,* made to defraud *creditors. Purchasers* are not embraced in its provisions, except by a saving of its operation against purchasers, for value, without notice of the fraud. It is argued that this cause presents a contest between a subsequent *purchaser* and the grantee under the first conveyance, and therefore does not fall within the terms of the 13 *Elizabeth,* that Act applying alone to *creditors.* That I concede.' It is farther contended, that the rule laid down by this Court, does not apply, under the Statute 27 *Elizabeth,* because that Statute relates to *lands* alone. This being a conveyance of *personal property,* it is claimed that it cannot be void by that Statute ; and farther, that the rule of presumption as to fraud, growing out of the retaining of possession, does not apply to it. The Circuit Judge held that the Statute 27 *Elizabeth,* applied to personalty as well as to realty, and that the possession in the vendor was, under that Statute, and also by the principles of the Common Law, independent of it, *prima facie* evidence of fraud. This decision is also excepted to.

The facts in this case, we think with the Circuit Judge, show a voluntary conveyance by Taylor, indirectly, to his children. We infer from the evidence, that it was an attempt circuitously to settle the property, by Taylor, upon his children. *That* he was entitled to do, directly or indirectly, if not done with a view to defraud creditors or purchasers. *Voluntary* conveyances of *lands* are within the Statute 27 *Elizabeth,* and may be set aside in favor of *bona fide* subsequent purchasers, for fraud. 'I state this proposition, irrespective of the question of *notice,* which I shall consider hereafter. *Atherly on Marriage Settlements,* 187 to 206. *Goodright vs. Moses,* 1 *Bl. R.* 1019. *Evelyn vs. Templar,* 1 *Bro. R.* 148. *Doe vs. Manning,* 9 *East,* 59. *Cormick vs. Trapaud,* 8 *Dow.* 60. 1 *Smith's Notes,* 39.

Is any conveyance of *personal property* within the 27*th Elizabeth ?* By its terms, conveyances of personal property are ex-

cluded. That is to say, they are not, by its terms, embraced in the Act. By the 13 *Elizabeth*, creditors are protected against fraudulent conveyances of *lands* and *goods*—not only existing creditors, but subsequent creditors. Such is the construction of that Act in England. Now it is difficult to conceive why a subsequent creditor should be protected against a fraudulent conveyance of personal property, and not a purchaser, who without notice, has paid his money *bona fide*. His equity is as strong as the creditor's. The Acts of 13 *and* 27 *Elizabeth*, are *in pari materia*, and construed together. It is no forced construction of both, to hold purchasers of personal property, within the provisions of the consolidated Act. The spirit of the Act of 13 *Elizabeth*, would let in purchasers as well as creditors, and the spirit of 27 *Elizabeth*, would let in personal property, as well as real. There doubtless were reasons in England, growing out of the paramount value of real estate, as late as the reign of *Elizabeth*, why the Legislature should throw around the purchaser of lands, stronger protection than the purchaser of personalty. Those reasons do not exist here. In Georgia, personal property, by which I mean slaves more particularly, is relatively more valuable than real property. Socially, politically, and as property, they are the most important of all values. Frauds are more easily perpetrated in the sale of slaves than of lands. It is clearly the policy of our State, to extend the provisions of the Statute of *Elizabeth* to personal property.

[3.] Whether it be true or not, as stated by *Lord Mansfield* in *Cadogan vs. Kennett*, that the Common Law would have accomplished all the ends proposed by the Statutes of *Elizabeth*, without those Statutes, I am satisfied that upon Common Law principles, a voluntary conveyance is void against subsequent *bona fide* purchasers, for a valuable consideration, without notice. The Statute simply declares conveyances to defraud purchasers, void. It goes upon the idea of fraud. It however does not declare in what the fraud shall consist, or how it shall be established. It does not, for example, make a conveyance void, simply because it is voluntary. It leaves the question of fraud to be determined, by reference to principles and rules, recognized at, and established by the Common Law. Whence, for example, are those indicia of fraud, resolved in *Twyne's* case, derived, if not from the Common Law? Certainly not from the Statute—that is silent, as to

what shall be badges of fraud. And is it an idea new to the Common Law, that a conveyance *intended to defraud*, is void? Fraud vitiates all transactions into which it enters.

No principle of Equity is better settled, than that Equity will refuse its aid to enforce or sustain a fraudulent contract, to the prejudice of third persons. Once establish the fact of fraud, and the conveyance fails. In contests between the original grantee, under a voluntary conveyance, and the subsequent purchaser, the interest of the former is left out of the reckoning. It is a question of fraud or not, upon the rights of the purchaser, perpetrated by the grantor. Now, in case of a voluntary conveyance, how is it that the Courts arrive at the conviction that it is void? By inferring from direct evidence, or from circumstances, that it was *intended* to be a fraud. By many adjudicated cases in England, the Courts inferred the fraud, from the fact of a subsequent conveyance, and held that the conveyance was void, even with notice ; making the fraud to relate back from the subsequent sale, to the primary conveyance. This inference was not the creature of the Statute—it resulted from the application to the case, of a Common Law principle. So also, when the Courts came to hold that a voluntary conveyance was void against a purchaser for value, only where he had no notice, how was it that they arrived at that conclusion? By inferring, as they did in the former cases, a fraud, and by invoking in behalf of its victim, a principle of Equity, to-wit : that he who honestly buys and pays for property, ignorant of a prior settlement, is better entitled to it than he who is the mere beneficiary of the grantor. After all, fraud, in fact, is the ground upon which the Statute goes ; whether a fraud or not, is to be determined upon principles derived from the Common Law. When, therefore, the Statute enacts that a conveyance of lands is void, when made to defraud purchasers, it is declaratory of the Common Law. Concede then, that it does not embrace conveyances of personalty, where do they stand? As they stood at Common Law. I mean therefore to say, that to make a conveyance of personalty void against purchasers, it is not indispensable to make it fall within the Statute of 27 *Elizabeth.*

Perhaps a yet stronger illustration of the fact, that the enforcement of these Statutes depends upon the rules of the Common Law, and that they therefore declare only the results of those

rules, is found in the case of an absolute sale of personal proper-
ty. We hold, with many of the Courts of this Union, that the
retention of possession by the vendor, is *prima facie* evidence of
fraud, which may be explained, and if not explained, becomes
conclusive. And we hold farther, that the Jury shall determine
the sufficiency of the explanation. Now, in a case where the pos-
session is proven, the grantee is of course entitled to rebut, and a
direct issue is formed. That issue is wholly independent of the
Statute—it must be tried by the rules of evidence known to the
Common Law. And when tried and found against the first pur-
chaser, in favor of a creditor, the Statute 13 *Elizabeth* comes in
and declares the sale void. I know that the idea of *Lord Mans-
field,* that all the objects of these Statutes are attainable at Com-
mon Law, has been disavowed by eminent men in England;
among them, *Mr. Smith,* a brilliant light, extinguished but too
soon. Nor will we say that *all* their objects are attainable there;
yet we are prepared to say, that by the long settled rules of the
Common Law, a voluntary conveyance, made to defraud purcha-
sers for valuable consideration without notice, is void. And far-
ther, we believe that although purchasers are not embraced in
the terms of the Act of 13 *Elizabeth,* nor personal property, in
the terms of 27 *Elizabeth,* yet both are embraced in the spirit of
those Acts respectively. So that we sustain the Circuit Court,
as to these questions. See an able opinion by *Nott, J.* in *Hud-
nall vs. Wilson,* on these points, 4 *McCord,* 297. 1 *Am. Lead.
Cas.* 63. *Cadogan vs. Kennett, Cowp.* 434. 5 *Peters,* 267.
*Twyne's Case, Smith's Lead. Cas.* 29. *George vs. Kemball,* 24
*Pick.* 234. *Thompson vs. Lee,* 3 *Watts & Serg.* 479. *Neal vs.
Williams,* 18 *Maine,* 391. 1 *Halst.* 155.

The presiding Judge farther held that, viewing this transac-
tion as a voluntary conveyance by Taylor to his children, the re-
tention of the possession was *prima facie* evidence of fraud, in fa-
vor of subsequent purchasers, notwithstanding the record of the
deeds. In other words, the Court held that in case of a volun-
tary conveyance to children, the grantor remaining in possession,
a subsequent purchaser will be protected, unless he has notice of
such conveyance, and that the record of the deed is not notice to
the purchaser. *Judge Fleming* decided that notice, to prevent
the operation of the Statute in favor of the purchaser, must *be
positive;* that the notice *implied* by the record, is *not sufficient.*

To this ruling the plaintiff excepted. Does the fact that the conveyance is to the *grantor's children*, vary the rule ? I think not. A man may commit a fraud, as well by using his children as instruments, as a stranger. It is true, that there does arise a presumption of fairness, from the fact that the conveyance is in favor of those who have the strongest claim upon his bounty, and whom it is his duty to provide for. But that fact is by no means conclusive. It is to be considered, it is true, in determining the question of fraud. It may be sufficient to sustain the conveyance, in the absence of such proofs as go to establish a fraud, and it may be overborne and silenced by them. To this extent *Judge Fleming* gave effect to this fact; but he held, and we think correctly, that the presumption of fraud in this case, arising from possession, from the subsequent sale and other circumstances, was not rebutted by it; particularly, as the purchaser was without notice. *Atherly on Marriage Settlements*, 199, 200. *Chapman vs. Emmory, Cowp.* 278. *Oxly vs. Lee, Prec. in. Ch.* 15. *Lavender vs. Blackstone*, 2 *Lev.* 146. *Goodright vs. Moses, Black.* 1019. *Evelyn vs. Templar*, 3 *Bro. C. C.* 147. *Doe vs. Hopkins,* cited 9 *East, T. R.* 70.

[4.] *As to notice.* It is not to be denied but that very many decisions in England, of the highest authority, go the extent that a voluntary conveyance is void, against a subsequent purchaser for value, *even with notice.* The reasons upon which these decisions are founded, are thus stated by *Ch. J. Marshall*, in *Cathcart, et al. vs. Robinson*, 5 *Peters*, 279. " Their decisions do not maintain that a transaction, valid at the time, is rendered invalid by the subsequent act of the party. They do not maintain that the character of the transaction is changed, but that testimony afterwards furnished, may prove its real character. The subsequent sale of the property is carried back to the deed of settlement, and considered as proving that deed to have been executed with a fraudulent intent, to deceive a subsequent purchaser." The fraud was made to depend alone upon the evidence furnished by the subsequent sale. That was held conclusive, even with notice, and could not be rebutted in some of the cases. 1 *Mad. Ch.* 271. 18 *Vesey*, 110. 2 *Taunt.* 523. 5 *R.* 60, *b.* *Ambl.* 285. 1 *Black.* 1019. 1 *Bro. R.* 148. 9 *East*, 59. 8 *Dow.* 60.

Contrary to this rule, and in support of a voluntary conveyance against a purchaser, *with notice*—see *Cro. Jac.* 158. 2 *Lev.*

105.  1 *Eq. Ca. Ab.* 354.   *Cowp.* 712.  1 *Cas. in Ch.* 287.  *Prec. in Ch.* 14.   1 *Atk.* 624.   1 *Sid.* 133.   *Atherly*, 197.

According to the opinion of *Ch. J. Marshall*, the construction of the *Statute of Elizabeth* was very unsettled in England, at the era of the American Revolution.   The decisions, however, unquestionably went so far as to make a subsequent sale to a purchaser without notice, presumptive evidence of fraud, against one who had made a settlement, not on a valuable consideration, which threw on the person claiming under such settlement, the burthen of proving that it was made *bona fide*.   This is the rule of the Supreme Court of the United States, and of most of the Courts of this country.   It seems consonant with reason and equity, and we adopt it as the rule of this Court.

Our judgment is, that a subsequent purchaser is not protected, unless he buys *without notice*.   See authorities last cited, and 4 *Kent*, 463, 464.   18 *Vesey*, 110.   *Ibid*, 88, 89.   4 *McCord*, 294. 4 *Cow.* 603, 604.   14 *Mass.* 139.   5 *Peters*, 280.

What shall be notice to him, is the only remaining question. We believe that the notice must be *actual*, in order to make the conveyance good against him;· that is, there must be brought home to him, knowledge of the prior conveyance, at the time of his purchase.   How this shall be done, must depend upon the circumstances which attend each case.   Whether in a given case, the purchaser had this knowledge, must depend upon the proofs adduced to establish it.   *Constructive* notice will not do alone ; and therefore, the registry of a prior deed will not do.   However, for many purposes, the record of a deed is notice, we hold that it is not such notice as will make a voluntary conveyance good against a subsequent purchaser, for value.   The principle upon which a purchaser is not protected, who has notice, is this: Knowing of the existence of a prior deed, he is presumed to be guilty of a fraud upon the rights of the prior grantee.   Now, it is unreasonable to presume a fraudulent intention, from knowledge of a fact, that is itself (the knowledge) a matter of presumption ; a matter of mere legal construction.   It will be observed that the question of *fraud* which arises here, is not one of legal fraud, but it is a question of fraud, actual.   The actual fraud of a subsequent purchaser cannot, it seems to me, be established upon the basis of an abstract legal inference, to-wit : the inference which the law draws, that when a deed is recorded, the whole world, and

therefore, the purchaser in question, has knowledge of it. This is a basis altogether too unsubstantial, upon which to rest the property rights of men. Fraud must be in all cases *proven;* it may be proven by circumstances; it may be presumed from them; but still, it is a general rule that it must be proven. A fraud, in fact, cannot be demonstrated by construction. The case, therefore, before me, differs from those where ordinarily, the record of a deed is held to be notice. This is a case where, not the title of the subsequent purchaser is concerned merely, but where his *conscience* is to be affected. The operation of the Registry Acts may and do, in many instances, bind the former; but actual notice can only bind the latter. If the purchaser is postponed, it is upon the ground that he is *particeps criminis* with the fraudulent grantor. The act of buying property, with knowledge that another has a legal or equitable title thereto, is *dolus malus.* Now, it may be well put, how can one's conscience be affected by construction? Or how can an act be *dolus malus,* without a criminal intent? And how can there be a fraudulent intent, without knowledge of the existence of any rights to be defrauded? In England, the doctrine is well settled, " that a mere registration of a conveyance shall not be deemed constructive notice to subsequent purchasers, but that actual notice must be brought home to the party, amounting to fraud." 1 *Story's Eq.* 391, *sec.* 402. 2 *Sch. & Lefr.* 66. 1 *Ibid,* 137. 2 *John. Ch. R.* 182. 2 *B. & Beatt,* 75. 2 *Eq. Ca. Abr.* 615. 1 *Conn. R.* 182. 1 *Y. & Jerv.* 117. *Atherly on Mar. Set.* 197, (1.) *Charlton's R.* 285. In the United States, the rule is pretty well established differently. 1 *John. Ch. R.* 394. *Story's Eq. sect.* 403. Scarcely any Court, under the facts of this case, would hold the subsequent purchaser bound by the constructive notice, derived from the registration. There was nothing to warn him of another title—no clue to direct his search after one; but on the contrary, everything seemed to be calculated to quiet the suspicions of a wary man. Taylor never parted with possession at any time—he exercised acts of ownership over the property for years after the first conveyance—he sold the property openly, as his own.

Let the judgment of the Court below be affirmed.