OCKLAWAHA RIVER FARMS COMPANY, A CORPORATION, *Appellant,* v. JEFFERSON D. YOUNG, THOMAS STONE-WALL KYLE, CLAUDE E. CONNOR, RUBIE C. CONNOR, ALABAMA CITY LAND & DEVELOPMENT COMPANY, A CORPORATION, AND NENA KYLE ELLIOTT, AS EX-ECUTRIX OF THE WILL OF J. M. ELLIOTT, JR., DE-CEASED, *Appellees.*

Opinion Filed January 31, 1917.

Petition for Rehearing Denied March 31, 1917.

1. Section 1 of Article XI of the Constitution of Florida, 1885, which provides that the property of a married woman owned by her before marriage, or lawfully acquired afterward, shall be her separate property, and shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting con-veyances by married women, does not preclude a married woman from subjecting her separate property to the payment of her husband's pre-existing debt by joining with him in the execution of a mortgage in the form of a deed absolute, provided the same is executed in accordance with the law re-specting conveyances by married women.

2. When a married woman, under the provisions of Section 1, Article XI of the Constitution of Florida, 1885, consents that her separate property shall be liable for the debts of her husband, such consent may be in the form of a deed absolute

to her separate property which by evidence *aliunde* may be shown to be a mortgage, and need not expressly recite her consent to the subjection of her property to such purpose, nor need such consent be supported by any other consideration than the debt of her husband.

3. A married woman who joins with her husband in the execution of a mortgage upon her separate property to secure a debt of her husband, and such mortgage is in the form of a deed absolute which recites a specific amount as consideration, and she afterwards institutes a suit against her husband and the mortgagee for the purpose of having the instrument declared to be a mortgage, and for an accounting to ascertain the amount of indebtedness to secure which the mortgage was given, she will be bound by the decree in such suit adjudicating the character of the instrument and the amount due, which it was given to secure.

4. A pre-existing debt of the husband is a sufficient consideration to support a mortgage to his creditor executed by the debtor and his wife upon the latter's separate property to secure the debt, and such consideration is a good consideration within the meaning of Section 2514 of the General Statutes of Florida, and in the absence of fraud and injury to a subsequent grantee such mortgage is a valid obligation, and will not be declared void at the instance of a subsequent purchaser with constructive notice of its existence.

Appeal from Circuit Court for Marion County; W. S. Bullock, Judge.

Order affirmed.

*Hocker & Martin,* for Appellant;

*Hampton & Hampton,* for Appellees.

ELLIS, J.—In January, 1915, the Ocklawaha River Farms Company, a corporation, exhibited its bill in chan-

cery against Jefferson D. Young, Thomas Stonewall Kyle, Claude E. Connor, Ruby C. Connor, the Alabama City Land & Development Company, a Corporation, and Nena Kyle Elliott as Executrix of J. M. Elliott Jr., deceased, and prayed that certain deeds made by Ruby C. Connor and her husband to J. M. Elliott Jr. be declared void as against the complainant and Young and Kyle; that a deed by J. M. Elliott Jr. and wife to the Alabama City Land & Development Company, dated July 25th, 1910, and filed for record March 16th, 1912, be declared void, and that Nena Kyle Elliott as Executrix and the Alabama City Land & Development Company be divested of all interest or claim to such part of the lands as are owned by the complainant, and that if the deeds of March 23rd and March 28th, 1908, which were the deeds executed by Ruby C. Connor and her husband to J. M. Elliott Jr., are decreed to have any binding force (as a mortgage) that complainants may be permitted to redeem the lands upon the payment of whatever may be adjudged to be a valid charge against the same, and for general relief.

The bill as amended alleges in substance that the complainant is "seized and possessed of a fee simple estate" in certain lands located in Marion County, and that it acquired the lands in 1913 under a deed of conveyance from Z. C. Chambliss, Trustee, for the defendants Young and Kyle; that Chambliss as Trustee acquired the lands under a warranty deed from Young and Kyle and their wives, and that Young and Kyle acquired the lands from Ruby C. Connor and her husband Claude E. Connor by warranty deed in 1909. That complainant has been in possession of the lands since the Spring of 1913, and has expended a large sum of money on them in improvements; that on March 23, 1908, Ruby C. Connor, who

was the owner of the lands described in the bill, "attempted to execute a deed to the said lands" to J. M. Elliott Jr.; that the deed was in the statutory form of a warranty deed and expressed a consideration of five thousand dollars, but the lands were misdescribed, and on the 28th of March, 1908, the error being discovered, Ruby Connor and her husband executed to Elliott a deed correctly describing the lands. The second deed was also in the statutory form and expressed a consideration of one dollar and recited that the same was given to correct an error in the description of the first deed. Both deeds were recorded in the same book, the first on page one, 'and the second on page four. That in July, 1908, a building which was located on the lands was destroyed by fire, and Elliott collected the proceeds of the insurance policy amounting to four thousand four hundred dollars. It is alleged that the two deeds were given by the Connors to Elliott for the purpose of securing the payment of money, and if they had any binding effect constituted a mortgage; but the deeds failed to specify any debt for which they were security, and did not refer to any written obligation as evidencing any debt from Ruby Connor or her husband to Elliott. That in 1909 and repeatedly thereafter Elliott claimed that he did not know the amount in which C. E. Connor was indebted to him or the companies controlled by Elliott, and asserted and claimed to Connor, and Young and Kyle, that he, Elliott, was the owner of the property described in the two deeds; refused to state what sum of money the lands were intended to secure, refused to render an accounting to Ruby C. Connor or her husband for the proceeds of insurance, and in the Spring of 1909 "there was tendered in behalf of the said Ruby C. Connor to the said J. M. Elliott Jr. the sum

of five thousand dollars." It is also alleged that in March, 1909, Ruby C. Connor by her next friend J. D. Young, filed a bill in the Circuit Court for Marion County against J. M. Elliott Jr. and C. E. Connor, to declare the deeds mentioned to be a mortgage, and for the purpose of taking an account and to redeem the lands. A *lis pendens* was filed and recorded, that Elliott contested the suit, denied that the deeds were intended as mortgages, but were intended to vest in him the absolute title to the lands; that the Chancellor decreed the deeds to be mortgages, and that decree was affirmed by this court upon appeal by Elliott; that the said suit brought by Mrs. Connor is still pending in the Circuit Court, and that Elliott has brought forward and undertaken to charge a large amount of money claimed to be due to him and some of his companies by C. E. Connor as being secured by the mortgages, and some of such claims are barred by the statute of limitations and are "otherwise of a false and illegal character." By amendment to the bill it was alleged that the lands were the separate statutory property of Ruby Connor at the time she and her husband made and executed the deeds; that she was paid a large consideration for the deed she and her husband executed to Young and Kyle, who conveyed to Chambliss as Trustee for conveying the title to complainant who paid Young and Kyle a large consideration therefor; that up to April, 1909, Elliot permitted Ruby Connor and her husband to remain in possession of a large part of the property, but none of that described in the bill; that the entire tract of lands described in the deeds was unsuitable for occupation except the part occupied by Ruby Connor and her husband; that during the winter of 1908 and 1909 Elliott being advised that Young and Kyle were willing to undertake the reclamation of the land and expend a large sum in such work,

refused to render a true account of what was due him from Connor, but claimed that he, Elliott, was the owner of the land which had greatly increased in value because of the fact becoming known that the lands could be reclaimed, and that responsible parties were willing to undertake the work.

The original bill alleges that in July, 1910, Elliott in order to defeat the purpose of the suit brought by Ruby Connor by her next friend J. D. Young against Elliott and Connor her husband, undertook to convey the lands to the Alabama City Land & Development Company for an expressed consideration of ten thousand dollars. This deed however was not recorded until March 16, 1912. It was alleged that the Alabama City Land & Develoment Company was dominated and controlled by Elliott, and the deed to it was an attempt by Elliott to perpetrate a fraud on Ruby C. Connor; that the deed was not made until after the decree in the suit of Ruby Connor against Connor and Elliott was affirmed by this court, and after Elliott had lost an ejectment suit against Mrs. Connor and her husband involving the same lands, decided in December, 1909; that before Elliott took any steps to take or obtain possession of the lands Young and Kyle had expended a large sum of money on the lands in the work of reclamation that the deed from Elliott to the Alabama City Land & Development Company was without consideration, and the deeds from the Connors to Elliott in 1908 were intended merely as security for any proper debt then owing from Connor to Elliott.

It is alleged that Elliott died in November, 1914; that his will was duly probated and letters testamentary executed to the defendant Nena Kyle Elliott.

It is insisted, and the bill so charges, that the deeds

from the Connors to Elliott in 1908 which were decreed to be mortgages are void under Section 2514 General Statutes of Florida, as to subsequent purchasers by reason of the conduct of Elliott as recited in the bill and as stated in substance herein, and that if the deeds are valid as mortgages, they are of no binding force or effect as security for any amount in excess of five thousand dollars, and that after applying the proceeds of the fire insurance policy collected by Elliott there only remains due about six hundred dollars.

A demurrer was interposed to the bill upon the grounds that the facts stated did not render the deeds from the Connors to Elliott void; that the complainant did not offer to do equity, and there was no equity in the bill.   The demurrer was sustained, and this appeal was taken from the order sustaining the demurrer.

The controversy in this case arises upon two points: First, whether the deeds from Ruby C. Connor and her husband to J. M. Elliott Jr. executed in March, 1908, were void under Article XI of the Constitution of 1885, as being voluntary and without consideration and because they do not contain an expressed consent of Ruby C. Connor that the lands therein described shall be liable for the debt which the instruments were given to secure.   Incidental to this point arises the further question whether the amount secured by the deeds, if they are valid, is not limited by the consideration named therein, namely, five thousand dollars.

Second, does the conduct of J. M. Elliott Jr. since the execution of the deeds to him by Ruby C. Connor and her husband in 1908 render them void as to the complainants under Section 2514 of the General Statutes of Florida?

Appellants contend in their brief that Article XI of the Constitution requires that before the separate property of a married woman may become liable for the debts of her husband, her consent must be obtained in writing expressly giving such consent, and that a consideration must move to her or her husband for such consent at the time the written instrument is executed.

The bill alleges that the deeds from the Connors to Elliott, executed in 1908, were given for the purpose of securing the payment of money, and if they had any binding effect constituted a mortgage.

In the case of Connor v. Connor, 59 Fla. 467, 52 South. Rep. 727, Mrs. Connor, by her next friend J. D. Young, in a suit against her husband and J. M. Elliott Jr! sought to have the deeds of 1908 executed by her and husband to J. M. Elliott Jr. declared to be a mortgage to secure the indebtedness of her husband to Elliott. In that bill she alleged that she consented to secure the payment of the indebtedness of her husband to Elliott, and any future indebtedness of her husband to Elliott, and offered to pay any and all amounts due to him by her husband the payment of which was secured by said conveyances. The prayer was for an accounting and that she might redeem the land upon proper payments. A demurrer to the bill was sustained and an appeal taken from that order. This court held that the allegations of the bill indicated that the intention of the parties was to secure the payment of money due to the mortgagee by the husband of the mortgagor and reversed the order sustaining the demurrer. The case came to this court again upon an appeal from a decree on the pleadings and evidence, in which decree the Chancellor found the equities of the cause to be with the complainant and referred

the same to a Master to state an account between C. E.
Connor and J. M. Elliott Jr.   This court said that the
question presented was "whether on the evidence under
the statutes of this State the conveyance of the property
is in fact and in law merely a mortgage to secure the pay-
ment of money."   It appeared from the evidence on that
case that C. E. Connor was employed by J. M. Elliott Jr.
as a book-keeper and confidential assistant, and that he
used funds of his employer without authority, to a large
amount, the exact or even approximate sum not being
known at the date of the execution of the deeds, and that
with a view to reimburse Elliott for the money that C. E.
Connor had misappropiated, and to relieve her husband
from the stress of inability to pay a large but not defin-
itely ascertained sum of money, that he had uhlawfully
taken from his employer, Mrs. Connor joined with her
husband in the execution of the deeds to her separate
property, the recited consideration being five thousand
dollars. After reviewing the evidence in the case this court
answered the question in the affirmative.   See Elliott v.
Connor 63 Fla. 408, 58 South. Rep. 241.   We think that
the facts involved in the above litigation by which Mrs.
Connor as well as Elliott was bound, show a sufficient con-
sideration moving to Mrs. Connor for the execution of
the instruments, even if she were not estopped by the
character of the instruments from denying a considera-
tion.   But is not the debt of the husband a sufficient con-
sideration for the wife's consent?   At the common law
the estate which the husband acquired in the lands of the
wife was such an estate as could be transferred or alien-
ated by him, and was subject to sale on execution at the
instance of his creditors, 13 R. C. L. 1048; 2 Blackstone's
Com. 126-8; Rose v. Rose, 104 Ky. 48, 46 S. W. Rep.

524; McNeer v. McNeer, 142 Ill. 388, 32 N. E. Rep. 681; 2 Kent's Com. 130; VanDuzer v. VanDuzer, 6 Paige Ch. (N. Y.) 366.

The husband was said to have been seized of the freehold in his wife's lands *jure uxoris.* It was held to be a vested estate in him and it was not competent for legislation, without his consent, to take it from him and give it back to the wife. See Bishop on Law of Married Women, Sec. 40. The Act of March 6, 1845, Laws of Florida, changed the rule of the common law and provided that when a woman shall marry being seized or possessed of real property her title to the same shall continue separate, independent and beyond the control of her husband, and shall not be taken in execution for his debts, and further provided that a married woman may become seized of real property during coverture by bequest, demise, gift, purchase or distribution. But this acts also required that the property so acquired should be inventoried and recorded in the clerk's office of the county in which the property was situated at the peril of being liable for her husband's debts "as if this act had not been passed." See Mercer v. Hooker, 5 Fla. 277; Price v. Sanchez, 8 Fla. 136.

The Constitution of 1868, Art. IV, Sec. 26, secured to the married woman all property, real and personal, owned by her before marriage, or lawfully acquired afterward, as her separate property, and provided that it should not be liable for the debts of her husband. This provision repealed such portions of the statute as prior to the adoption of the constitution made the wife's property conditionally liable for her husband's debts. The Constitution of 1868 created an *unconditional* exemption of the wife's separate property from such debts. See Fairchild v. Knight, 18 Fla. 770. In the case of Staley v.

Hamilton, 19 Fla. 275, which arose upon a transaction in 1866, this court speaking through Mr. Chief Justice RANDALL, said the statute provided that the wife may mortgage her separate real property for any consideration whatever, " and so she may secure the payment of *any* debt of her husband or herself." But as the mortgage, which the wife signed in that case, was not executed in conformity with the statutory requirements, it was ineffectual, of no validity, and void. As the note which Mrs. Staley signed with her husband was not the method provided by statute for making her separate property liable for her husband's debt, it was of course ineffectual for that purpose. The view of the court seems to have been that parol evidence was not admissible to convert a void instrument into a valid one, nor convert a promissory note into a specific lien upon real property. There is nothing in that case inconsistent with the idea that if the mortgage had been properly executed it would have been enforced. Now while the Constitution of 1868 created an unconditional exemption of the wife's separate property from liability for the debts of the husband, the constitution of 1885 modified such exemption. It was probably done with the view of removing all possible conflicts between a constitutional clause providing unconditionally for the exemption of the wife's separate property from the debts of her husband and the statute which as construed in the above case provided that she might mortgage her property for the purpose of making it liable for her husband's debts. The statute which was in existence at the time the constitution of 1868 was in force contemplated that the husband's debt was a sufficient consideration to support the wife's mortgage of her property and the framers of the constitution of 1885 probably desiring to harmonize the constitutional pro-

visions on that subject with the laws as they had existed in this State since 1835, under which the rights of property for many years had been adjudicated, merely required, as the statutes did, the consent of the wife evidenced by a written instrument executed according to certain formalities. The contention of appellant is based upon the theory that when the wife consents to the subjection of her separate property to liability for her husband's debts, that she is in the same position as one who becomes a surety for a stranger, and a consideration must therefore flow to her from the creditor, else the contract of suretyship is *nudum pactum*.

But is this a contract of suretyship? The wife does not assume any obligation to pay the debt of her husband. It is not perfectly clear that the constitution even requires the instrument to be in the form of a contract, or mortgage, nor is it clear that any of the essentials of a contract are necessary. It is not required that there should be any mutuality of obligation between the wife and creditor of the husband, their minds are not required to meet on any proposition, her consent may be given without the creditor's knowledge, and it is not unreasonable to say that she may even limit the amount of indebtedness for which her property is to be liable as well as the portion of her separate property which she consents to subject to his debts. The "some instrument in writing" of the constitution may be very informal as to language and recitations so that the formalities of *execution* are duly observed.

This court said in the case of Fritz v. Fernandez, 45 Fla. 318, 34 South. Rep. 315, speaking through Mr. Justice HOCKER: "There is of course a difference between a wife's power of disposition of a purely equitable estate, and of her purely statutory property. In the former case

courts of equity recognize her complete power of dis-
position, unless that power was limited in the instru-
ment creating the estate.  In the latter case the power of
disposition is regulated by the statutes which create the
separate statutory property."  The learned Justice said
in that case, that no reason was conceivable why a wife
could not make a gift of her statutory property to her
husband.  When she consents that her separate property
shall be liable for her husband's debts she merely makes
a gift of it to her husband in effect.

The reciprocal obligations, duties and responsibilities,
both legal and moral, of husband and wife, growing out
of the status of marriage may take the case out of the
general rule.  The consideration which may induce the
wife to consent to the subjugation of her separate prop-
erty to the payment of the valid debts of her husband,
may exist solely between her and her husband, it may
grow out of the tenderest and most beautiful of senti-
ments which make the marital status a blessing to the
principals and a benefit to society.  These communications
between husband and wife are privileged.  Public policy
forbids the curious from prying into them, yet they may
afford the most potent reason for the wife's consent.  So
even as he may mortgage his property to secure the pay-
ment of a pre-existing debt, we think his wife may give
her consent in the manner provided by law that her prop-
erty may be subjected to the same purpose, without re-
quiring the acceptance of a dollar from a stranger to
give validity to the consent.  The effect of these changes
made by the statutes and constitution upon the common
law is beneficial both to the married woman and the
husband's creditors; on the one hand she is protected
from annoyance in the enjoyment of her property, while
upon the other hand the creditor by obtaining the wife's

consent according to the formalities of the statute may secure himself fully against loss on account of a debt due by the insolvent husband.

As to the contention of counsel that the written consent of the wife should expressly state that the instrument given is for the purpose of making her property liable for the debt of her husband, we think there is no reason for such a rule, and that the language of the constitutional provision does not necessarily carry such meaning. The language is as follows: "All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed acording to the law respecting conveyances by married women." The giving of the instrument in writing which is to be executed acording to the requirements of the statute respecting conveyances by married women, is the only evidence of consent required. If it is in the form of a mortgage, the mere placing of the lien upon the property is sufficient evidence of the consent. The only attribute required of the written instrument, is that its execution must be in accordance with the formalities of the statute which does not require that the real consideration or purpose of the conveyance shall be stated.

It is insisted by appellant that the mortgage made by Ruby C. Connor and her husband to J. M. Elliott, Jr., in 1908, is void under Section 2514 of the General Statutes of Florida as to complainant and those under whom it claims, by reason of Elliott's conduct since the mortgage was executed, and that as he paid no consideration for the mortgage he was not a bona fide purchaser, and was in the same position as a voluntary grantee. We do not

agree with this contention, as a pre-existing debt was a sufficient consideration to support the mortgage. The debt due by Connor to Elliott was a live, valid, enforceable obligation, and constituted a sufficient consideration for the execution of the mortgage by the husband and wife. At the time of this mortgage the complainants had acquired no interest or claim in or upon the property. Appellant did not become a purchaser until years afterwards. The records of the county, were open to it, and it was charged with notice as to the existence of liens and incumbrances upon the land which the record might have disclosed. The deed to Elliott from the Connors had been recorded and appellant therefore had constructive notice of its existence when it purchased. In the transaction between the Connors and Elliott in 1908 there was no injury at the time to the appellant; nor was there any element of fraud in it. Unless fraud and injury co-exist in a transaction the courts can render no relief. See Kelly Co. v. Pollock, 57 Fla. 459, 49 South. Rep. 934. The mortgage appears to have been made with an honest and lawful intent, and for a good consideration. This being true, it was valid, and no subsequent fraudulent or illegal act of the parties can invalidate it. See 12 R. C. L. 475; Dodd v. McCraw, 8 Ark. (3 Eng.) 83; Summers v. Ross, 42 Miss. 749; Currier v. Sutherland, 54 N. H. 475; Beck v. Parker, 65 Pa. St. 262.

Section 2514 of the General Statutes of Florida contains a proviso to the same effect. The language of the proviso is as follows: "Provided, That nothing in this section contained shall extend or be construed to impeach, make void or frustrate any conveyance, assignment or lease, assurance, grant, charge, lease, estate, interest or limitation, or use or uses of, in, to or out of any

lands, tenements or hereditaments, which shall be made upon and for good consideration and bona fide, to any person or persons, bodies politic or corporate, anything in this section to the contrary notwithstanding."

According to the view which we have of the above statute, and our understanding of the argument of counsel for appellant, the proviso of the act is itself an answer to the argument if it be admitted that the deed of 1908 was not a voluntary conveyance, that is to say, that Elliott was not in the position of a voluntary grantee. The history of the law of fraudulent conveyances shows that from the earliest times transfers of *personal* property in fraud of creditors have been deemed void at common law. The principle underlying the law was that the credi-tor had a claim upon the property of his debtor constituting the fund from which the debt should be paid. If the debtor therefore in the exercise of his right in the matter of disposing of his property, ignores the equitable right of his creditors to be paid out of the property in his hands, and exceeds the legitimate authority over his property by disposing of it with intent to delay or defraud his creditor, such disposition was deemed inequitable and void. The common law however was deemed too rigid in requiring proof of fraud; so statutes were passed in England to protect society from the imposition of cheats and swindlers and other fraudulent persons, and to hold in check the fraudulent contrivances of such persons. See 12 R. C. L. 465; People v. Garnett, 35 Cal. 470; Sands v. Codwise, 4 Johns (N. Y.) 536. The first statutes were aimed at the fraudulent gifts of chattels. The 13th Elizabeth c 5 at conveyances of land as well as chattels to defeat *creditors,* and the 27th Elizabeth c 4 against fraudulent conveyances to defeat subsequent purchasers. See Fleming v. Townsend, 6 Ga. 103; Springer v. Drosch,

32 Ind. 486; Filley v. Register, 4 Minn. 391; Livermore
v. Boutelle, 11 Gray (Mass.) 217; Trotter v. Howard,
8 N. C. (1 Hawk) 320; Heath v. Page, 63 Pa. St. 108;
Fowler v. Stoneum, 11 Tex. 478; Elliott v. Horn, 10 Ala.
348. These statutes were said to be declaratory of the
common law, and that without their aid the common law
principles which are so strong against fraud, would have
in the end accomplished the result aimed at by the statutes.
See Howe v. Waysman, 12 Mo. 169; Hall & Farley v.
Alabama Terminal & Improvement Co., 143 Ala. 464,
39 South. Rep. 285, 5 Ann Cas. 363, 2 L. R. A. (N. S.)
130. These statutes were adopted by the Territory of
Florida in 1823, and have been continued upon the statute
books of this State to the present time. There are some
slight variations in the language of our statutes, sections
2513-2514-2515 General Statutes of Florida, 1906, from
that of the English originals, due perhaps to a laudable
ambition to improve upon the English model. It is con-
ceded that the statutes are highly remedial, beneficial in
their nature, entitled to a liberal interpretation, are in
pari materia and should be construed together. The
words "utterly void" in each of these statutes 13 and 27th
Elizabeth, Sections 2513-2514 General Statutes, have not
been given by the courts the full significance which they
seem to imply. The word is construed to read "voidable"
and voidable only at the instance of those embraced
within the meaning of the terms "creditors and others"
or "purchasers." See 12 R. C. L. 474 and authorities
cited; also Kent v. Lyon, 4 Fla. 474; McKee v. West,
141 Ala. 531, 37 South. Rep. 740; Doster v. Manistee
Nat. Bank, 67 Ark. 325, 55 S. W. Rep. 137; First Nat.
Bank of Riverside v. Eastman, 144 Cal. 487, 77 Pac.
Rep. 1043, 1 Ann. Cas. 626; Beidler v. Crane, 135 Ill.
92, 25 N. E. Rep. 655; Hendricks v. Mount, 5 N. J. L.

850; Loos v. Wilkinson, 110 N. Y. 195, 18 N. E. Rep. 99; Bynum v. Miller, 86 N. C. 559.

A purchaser who acquires a deed from an owner who has already incumbered his land, must occupy an analogous position to a creditor of such owner before he can complain of the prior incumbrance, and if the prior incumbrance was made in good faith for a good consideration it is valid as to such subsequent purchaser who has no right to have it declared void.

The appellant was bound by the prior deed, he was charged with notice of its existence, and by common prudence and ordinary diligence could have ascertained the extent of the incumbrance.

The order sustaining the demurrer to the bill is affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur.